STATE OF VERMONT *v.* WILLIAM W. CAMERON.

*Criminal Law. Indictment. Duplicity. Arrest of Judgment.*
*Prima Facie Case. Evidence. Reasonable Doubt.*
*Error. Exceptions.*

The indictment in this case alleged that the respondent, on the 9th day of September, 1866, one horse of the value of three hundred dollars, one buggy wagon of the value of one hundred and fifty dollars, and one harness of the value of fifty dollars, of the goods and chattels of W., feloniously did steal, take and carry away, &c. *Held*, not bad for duplicity.

State *v.* Cameron.

*Held,* that the horse, wagon and harness being taken at one time, constitute but one theft, and cannot be the subject of different indictments.

The state, before resting, proved that the respondent, on the 9th day of September, 1866, hired a team of W., at Rutland, for a short ride, and, on the 14th, was seen driving a similar team on a cross road in Warrensburgh, N. Y.; that nothing was heard of the respondent or the team for several weeks; that on the 17th day of October, 1866, the team was found at Mechanicsville, N. Y. *Held,* that the prosecution made a *prima facie* case.

The respondent's witness G., having testified that the team in question was bought by respondent's brother J., of a stranger, at Lake George, N. Y., it was *held* competent for the state to show that J. was then on the jail limits for debt, had failed in business, and had no visible means of support, as tending to contradict G.'s testimony.

One of the defenses in this case was an *alibi.* The court charged the jury, that in order to convict the respondent the prosecution must establish their whole case beyond a reasonable doubt; but, that if the *alibi* was proven, they must acquit him, and refused, on request, to tell the jury, that in order to convict the respondent they must find, beyond a reasonable doubt, that he was *not* at the place of the *alibi* on the day in question. *Held,* that in this there was no error.

The respondent requested the court to charge the jury, that the fact that the respondent had not taken the stand as a witness in his own behalf, should not be thought of, or taken into consideration by them to the prejudice of the respondent. This the court refused, saying he could not prevent their thoughts, but charged them, that the respondent's omission to take the witness' stand should not be taken against him. *Held,* that in this there was no error.

The failure of the court, on request, as in this case, to prevent the prosecuting counsel from arguing to the jury, that the omission of the respondent to testify was evidence against him, constitutes such error and irregularity as to require the verdict to be set aside, and a new trial granted, and is a proper subject of exceptions.

INDICTMENT in one count alleging that the respondent, on the 9th day of September, 1866, one horse of the value of three hundred dollars, one buggy wagon of the value of one hundred and fifty dollars, and one harness of the value of fifty dollars, of the goods and chattels of Daniel Whitcomb, feloniously did steal, take and carry away.

Trial by jury, at the September Term, 1867, AINSWORTH, Ast. J., presiding.

The state proved by John Pike, Ned T. Burdsell and J. R. Wyman, that a man came to the livery stable of Daniel Whitcomb, in Rutland,

State *v.* Cameron.

on the 9th day of September, 1866, and called for a horse for a short ride, but did not state where he was going, or when he would return, and thereupon John Pike, an employee of Whitcomb, harnessed a dark sorel mare to a black booted, side-spring, striped open buggy, for him; the harness was silver-plated, with a breast collar, and russet lines. As the man got into the buggy he called for a halter, and on being asked by Pike what he wanted of a halter if he was to take a short ride, replied that he might want to feed. A halter was furnished him, and he drove off, and neither the man, nor the team were heard of for several weeks.

The said Pike, Burdsell and Wyman, all swore that the respondent was the man who hired and drove off the team as above stated.

Zerah Evans and Albert H. Gleason, witnesses for the prosecution, both swore that they saw the respondent on the 14th day of September, 1866, driving a team upon a cross road in Warrensburgh, New York, and that the horse and buggy he was then driving very closely resembled a horse and buggy they had seen in Whitcomb's stable since they came here to attend this trial; that the horse was a dark sorrel mare, and the wagon a black, side-spring, open booted buggy; but no testimony was introduced by the state to show that the horse and buggy seen by Evans and Gleason at Whitcomb's stable, as above stated, were the same horse and buggy hired and driven off by the respondent.

Daniel Whitcomb, the owner of said property, and a witness for the prosecution, swore that he commenced hunting for the same the next day after it was taken, but did not find it until the 17th day of October, 1866, when he saw it at Mechanicsville, New York, without stating in whose possession, or under what circumstances it was found.

This was all the evidence introduced by the state when the prosecution rested; and thereupon the respondent claimed that the prosecution had not made out a *prima facie* case, and moved that the court direct the jury to return a verdict of not guilty for the defendant, which motion was overruled by the court.

George Cameron, a witness for the respondent, having testified in his examination in chief, that the team in question was purchased by

his brother, John H. Cameron, of a stranger, at Lake George, New York, also testified, upon his cross-examination, that his brother John H. Cameron was at Lake George on the limits; that he had failed in business, and had no visible means with which to pay his debts. This testimony, upon cross-examination, was seasonably objected to.

The respondent did not take the stand as a witness in his own behalf; and no testimony whatever was introduced by him explaining or denying the fact of his having been seen on said cross road on the 14th day of September, 1866, by Evans and Gleason, as sworn to by them, except that three of his witnesses stated that "the Cameron boys," including the respondent, were accustomed to drive a dark sorrel mare, called the Robinson mare, which resembled the one in question.

· The fact that the respondent did not take the stand as a witness in his own behalf was commented upon by the state's attorney while making the opening argument in the case, and claimed by him to be evidence of the guilt of the respondent. The attorney for the respondent thereupon objected to the state's attorney commenting upon this fact, and also at the same time stated that he objected to having any further allusion made to this fact, either by the state's attorney or any other attorney in the case, to the prejudice of the respondent. The court referred to the statute, and remarked that the refusal of the respondent to testify should not be considered by the jury as evidence against him; and the state's attorney desisted from making any further allusion to the matter; but his associate, in making the closing argument for the prosecution, commented at length upon the fact that the respondent did not take the witness stand and explain why he was seen on the cross road on the 14th day of September by Evans and Gleason, and urged it to the jury as evidence of his guilt. The attorney for the respondent then called the attention of the court to the fact that he had previously objected to having any further allusion made to this matter, and renewed his objection thereto, whereupon the court again remarked that this fact was not to be taken by the jury as evidence against the respondent, but the assistant prosecuting attorney, when he again resumed his argument, remarked to

the jury that he knew what the law was, but that the jury would take this fact into consideration, notwithstanding the law, and it could not be prevented; and again being reminded by the court that this was improper, he desisted from making any further allusion to this fact. To the court's thus suffering the assistant prosecuting attorney to comment upon this fact to the prejudice of the respondent, and claim that it was evidence of his guilt, the respondent excepted.

The court charged the jury, that it was claimed by the prosecution that it was not probable that John H. Cameron, Jr., being upon the jail limits, at Lake George, at the time of the alleged purchase, and having no available property, bought the horse, wagon and harness, and did the amount of business he claimed to be doing, and instructed the jury, that they might take that into account, and taken with the other testimony, give it whatever weight they thought it was entitled,—to which charge and instructions the respondent excepted.

The court also further instructed the jury, that it is a common occurrence for persons to be mistaken in identifying men, but are they not as liable to be mistaken as to dates? In view of all the testimony, if they found the fact that the respondent was at Stony Creek on Sunday, the 9th day of September, 1866, the day on which the property was taken, they would say, "not guilty;" but if on the other hand, they should be satisfied beyond a reasonable doubt, that the respondent was guilty of the offense, they would say by their verdict, "guilty." It must be found upon full proof, and if any reasonable doubt remained in their minds, after full consideration, they were to give the respondent the benefit of that doubt. To which charge the respondent excepted, and requested the court to charge the jury, inasmuch as it was conceded that if the respondent was at said Stony Creek, on said 9th day of September, 1866, he was innocent; that unless the jury were satisfied beyond a reasonable doubt that he was not at said Stony Creek, on said 9th day of September, 1866, as sworn to by the witnesses for the respondent, (the fact having been sworn to positively by a large number of witnesses,) the respondent must be acquitted; which charge the court refused to give, saying he had charged fully in regard to full proof.

The respondent also requested the court to charge the jury, that

the fact that the respondent had not taken the stand as a witness in his own behalf in this case, was not to be even thought of, or taken into consideration by the jury to the prejudice of the respondent; which charge the court refused to give, saying he could not prevent their thoughts, but did charge the jury, that the fact of the respondent's not taking the witness stand should not be taken against him, the law only giving him the privilege of choice; and if the respondent did not choose to testify, it must not be taken against him.

Verdict : "guilty."

The respondent then filed a motion in arrest of judgment, which was, pro forma, overruled. The substance of the motion is stated in the opinion of the court.

To the admission of the evidence objected to by the respondent, to the refusal of the court to charge as requested, so far as the court did so refuse, and to the charge on the points of the requests, so far as it varied from the requests, and to the overruling of the motion to direct a verdict of not guilty, and the motion in arrest, the respondent also excepted.

W. C. Dunton, for the respondent, argued upon the motion in arrest as follows : There are two or more distinct offenses, requiring different punishments, charged in the same and only count of the indictment. Gen. Stat. p. 668 and 669, §§ 9, 10 and 14.

For this reason the indictment is bad, and the judgment ought to have been arrested. People v. Wright, 9 Wendell, 193 ; State v. Nelson, 8 N. H. 163 ; Commonwealth v. Symons, 2 Mass. 163 ; Read v. The People, 1 Parker Cr. R. 481 ; U. S. v. Sharp, 1 Peters C. C. R. 131 ; 1 Arch. Cr. Pr. & P. C. 314, (note.)

E. Fisher, State's Attorney, and C. H. Joyce, for the State, in reply, argued that the indictment is not bad for duplicity ; and, even if it was, it could not be taken advantage of on motion in arrest. 17 Vt. 658 ; 1 Mass. 517 ; 20 Pick. 356 ; A. C. Law 396.

In 1839, horse stealing was made larceny by statute ; consequently it may well be joined in the same count with larceny of the wagon and harness. 16 Vt. 216, 261.

We insist that it would have been good before that revision of the statutes. Am. Cr. Law 363, 392 ; 1 Bish. on C. P. 191, 193 & 196 ; 2 Bur. R. 980 ; 14 Vt. 353 ; 8 Wend. 203.

The opinion of the court was delivered by

STEELE, J.  I. The indictment contains but one count and charges that on the 9th of September, 1866, the respondent feloniously did steel one horse of the · value of three hundred dollars, one buggy wagon of the value of one hundred and fifty dollars and one harness of the value of fifty dollars, the proper goods and chattels of a person named.  The jury returned a general verdict of guilty.  The respondent moves in arrest upon the ground that two distinct offences are joined in one count.

It is well settled that a single count charging more than a single offense is bad for duplicity and this is true even though the offenses are of the same grade and might without misjoinder be embraced in separate counts in one indictment.  Arch. Cr. Pr. and Pl. 313 and cases cited.  It is not, however, necessarily duplicity to charge different *crimes* in one count if they grow out of a single offense and the denomination of the crime and consequent severity of the punishment depend upon the extent to which that offense may be proved to have been carried.  Thus, in *Commonwealth* v. *Tuck*, 20 Pick. 356, a single count charging that the respondent broke and entered a shop with intent to commit a larceny and did then and there commit a larceny, was held not to be double.  In this State in the case *State* v. *Brady*, 14 Vt. 355, it was even held that a single count, charging a burglary with intent to steal the goods of one person and an actual larceny then and there of the goods of another person, was good.  The case came up, as this does, upon a motion in arrest, but ROYCE, J. put the decision of the court upon the ground that the pleading is correct and not upon the ground that duplicity could not be objected to upon motion in arrest.  This case has been cited with approval in other States and has never been questioned here. It is, then, quite clear that while one count can charge but one offense, it may, with proper limitations, charge that offense or transaction in such a way as to allege different crimes.  The conviction

under such a count may be for the greater or the lesser crime according to the proof, but if the burglary and larceny both should be proved, the punishment provided for by the two crimes cannot be added together and inflicted upon the prisoner. The highest punishment which can be inflicted is that provided for the higher crime which the offense is alleged to have constituted.

Now, in this case, does the count allege more than one offense? The indictment charges but one taking on one day of several articles of property belonging to one man. It, in fact, charges but one larceny consisting of the felonious taking of three articles, namely, a horse, wagon and harness. If they had been taken at different times, they would have been several larcenies, and might have been the subject of different indictments. Taken at one time they constitute but one theft, and cannot be the subject of different indictments. It is to be borne in mind that horse stealing has ceased in this State to be a distinct crime. It is larceny and nothing more. The whole transaction set out in the indictment was but one offense and that offense constituted the crime of larceny. It being a single theft, the person was liable to but one sentence for it, and the indictment does not come within the rule that one count charging more than one offense is bad for duplicity. The statute, while it treats the stealing of a horse as no crime but larceny, provides that it may be punished with more severity than stealing a wagon or harness. It is, therefore, urged that on a general verdict of guilty the court would be unable to say whether the jury found the prisoner guilty of stealing more than one of the three articles and would be unable to determine what sentence to pronounce. This objection is precisely what was urged against the now well settled rule we have referred to in cases where the same count alleged a burglary with intent to commit a larceny and a larceny. It could be urged even more forcibly in those cases than in this, for the difference in penalty provided for burglary and larceny is far wider than the difference provided for larceny of a horse and a common larceny. The difference in the latter is only in the matter of fine. It does not extend to a difference in imprisonment. If, then, it is permissible for one count to charge an offense so as to constitute crimes of different denominations as larceny and

State *v.* Cameron.

burglary, still more should it be to so charge it as to constitute a crime of but one denomination, and only differing in enormity and penalty according to the proof, and differing in these respects less widely than burglary and larceny.

It is true that this is not one of those cases where guilt of the higher grade involves necessarily guilt of the lesser, as assault with intent to kill, involves assault. The larceny of a horse does not necessarily involve the larceny of a harness though it may lead to it. But it involves it quite as much as burglary with intent to steal a harness involves larceny of a harness. In neither case would it be necessary to prove the larceny of the harness to subject the offender to the higher punishment, and in either case proof of the larceny of the harness alone would warrant conviction. All possible difficulty in pronouncing sentence is avoided by a special verdict. The case *People* v. *Wright,* 9 Wend. 196, cited on behalf of the respondent does not conflict with these views. In that case a single count charged two forgeries in the alteration of two distinct instruments, one a mortgage, the other a receipt upon the mortgage. In this case the count charges but one larceny. That case called the following language from NELSON, J., "It" (the first count) "charges the prisoner with forging two distinct instruments, a mortgage and a receipt, and if forging either is an offense, the count is probabaly defective for duplicity." The case *State* v. *Nelson,* 8 N. H. 163, seems to be in point for the respondent, and were it not for that case we should not have felt warranted in indulging in so long a discussion of this question. In that case a count precisely like this was held bad upon motion in arrest. It is perhaps worthy of notice that the court in that case lay stress upon the fact that the larceny of the horse demanded a punishment differing not only in amount but in kind from the larceny of the other property, which was found to be worth nineteen dollars. In that case it is said that the count is to be interpreted as charging distinct larcenies, and that "it is very clear that two distinct larcenies may be committed by the same person at one and the same time." This proposition is asserted upon the authority of the following *dictum* from 2 East's Crim. Law, 521, "If one steal at one and the same time the goods of A. and also the goods

of B. there are two distinct larcenies." Now, even if we should concede the correctness of this *dictum* it would not follow that there would be two distinct larcenies if *all* the goods were A's. We only add upon this subject that upon full argument of the question in a similar case, *State* v. *Nutting*, 16 Vt. 264, while the case was decided upon other grounds, WILLIAMS, Ch. J. remarked, " this information contained one count only. Our present statute making horse stealing larceny, the question which arose under our former statute relating to joining in one indictment horse stealing and simple larceny probably does not now arise."

The respondent's exceptions upon this branch of the case cannot prevail.

II. Several points of exception were also reserved upon the trial.

1. We think that under the rule established in this State, the prosecution made out a *prima facie* case before resting, and the court properly refused to direct a verdict for the respondent.

2. The respondent's witness, George Comeron, having testified that the team which the respondent had was bought by John H. Cameron at Lake George, it was competent to show that John H. was on the jail limits for debt, having failed in business and having no visible means of support, as all this tended to show the improbability of the story of his purchase. It is no objection to the admissibility of testimony that it is not conclusive. We see no error in the admission of this evidence nor in the manner of its submission to the jury.

3. The instructions of the court upon the law of reasonable doubt were correct. It was no part of the duty of the court to put this familiar proposition into all the varieties of form of which it is susceptible or which parties might regard desirable. The court told the jury if the *alibi* was proved, to acquit the prisoner, but did not, on request, tell them to acquit him unless they found beyond a reasonable doubt that the prisoner was *not* at Stony Creek (the place of the *alibi*) on the day in question. The charge of the court was broader, that the prosecution must establish their *whole* case beyond reasonable doubt. This would require the jury to find with certainty not only that the respondent was *not* at Stony Creek but that he *was*

at Rutland.   If they found the latter proved beyond a reasonable doubt, it would follow they found the former by the same measure of proof.

4.  We see no error of law in the charge of the court upon the subject of the respondent's omission to testify on his own behalf.   The court was bound to tell the jury they were not to *consider* this against the prisoner, and this was done.   The court did not, as requested, tell the jury they were not to *think* of it.   Such instructions would not be sensible.   The jury could not *think* of the charge without *thinking* of the subjects of the charge, and one of the subjects of the charge was the respondent's omission to testify.   Such a charge would be violated by the jurors' bearing it in mind to follow it.   It *was* the duty of the jury to *think* on this subject enough to see they did not allow it to prejudice the respondent.   The remark of the court in reply to this request, that he could not control the thoughts of the jury was unfortunate as unintentionally it may have given some countenance to the idea suggested by the prosecuting counsel, that whatever the law was, he knew they would consider this omission against the respondent.

5.  The only remaining question is, whether the failure of the court, on request, to prevent the prosecuting counsel from arguing to the jury at length, and as stated in the exceptions, that the omission of respondent to testify was evidence against him, constitute such error and irregularity as to require the verdict to be set aside and a new trial awarded.   We think it does.   It is no *question* of law whether this matter is to be considered by the jury.   By the express terms of the statute as well as the fair interpretation of the constitution it is forbidden.   The respondent's omission to testify, not only by law creates no presumption against him, but it permits no such presumption in fact.   The statute permitting a prisoner to testify for himself is a mere statute of privilege.   The courts in this State not having usually followed the old English practice of calling upon the prisoner to make his statement to the jury, and there being a certain class of cases in which a prisoner might be benefitted by testifying, the statute has awarded him this privilege with a view to its being used in such exceptional cases.   In the great body of cases no wise practi-

State *v.* Cameron.

tioner would permit his client, whether he believed him guilty or innocent, to testify when upon trial on a criminal charge. The very fact that he testifies as if with a halter about his neck, that he is under such inducement to make a fair story for himself, his character and his liberty if not his fortune and his life being at stake, is enough to usually deprive his testimony of all weight in his favor, whether it be true or false. This is the case even when his manner upon the stand is unexceptionable, while his critical condition often creates such apprehension and excitement that his manner is open to great criticism, and if he does make a mis-step after voluntarily assuming the responsibility of testifying, it will naturally be construed strongly against him. In short, his testimony is far more likely to injure him seriously than to help him a little. It is true that a clear intellect and perfect self-possession may enable an unscrupulous rogue to run the gauntlet of a cross-examination and make something out of this privilege, and the same qualities will be still more likely to help an innocent man to some advantage from it, but the true application of the statute is only to those rare cases, when a word from the prisoner, and him only, will manifestly dispose of what otherwise seems conclusive against him. One great objection to the statute is its liability without suggestion to just the abuse, which, according to the bill of exceptions, counsel claimed and argued for it in this case. It appears that the court did check this irregular mode of argument in the opening, but in defiance of the court it was repeated at length in the close. The law provides ample means by which the court could have enforced their order and we do not think we ought to pronounce judgment and sentence upon a verdict so obtained. It is urged that this is not a proper subject of exception, but there would seem to be no practical distinction between an irregularity, suffered as this was, and one in terms permitted.

For this cause a new trial is awarded.