## IN RE CAROLINE W. ROGERS' WILL.

### May Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed August 29, 1907.

*Wills—Undue Influence—Confidential Relation—Pastor—Evidence—Presumptions as Evidence—Burden of Proof—Spoliation—Instructions.*

In a proceeding to establish a will, contested on the ground of mental incapacity and undue influence, where it appeared that some years previous to the execution of the questioned will, the testatrix, and a sister and brother, both of whom she had survived, each made a will in favor of the other two, and the evidence tended to show that the testatrix erroneously supposed that, under those wills, the survivor would take the property of the other two, it was not error to allow proponent's witness to testify that he was present when

the three wills were executed and that then, in the presence of the testatrix, some one said that the survivor of the three was to inherit all their property, as showing a reason why the testatrix made no valuable bequests to her brothers, in connection with the clause in her will: "Because of a flaw in the wills of my brother George, and my sister Lucy, my brothers John and James have taken what I otherwise should have given them in this my last will, this is the true reason why I do not remember them more liberally in this will."

Proponent's witness testified that he attended the execution by the testatrix of a former will, drawn by him from notes furnished by her; that, in accordance with her request, he held that will till the one in question was filed in probate court, and then destroyed it; that he could not find the notes and thought he must have destroyed them, whereupon the court allowed him to give his recollection of their contents. *Held*, that the fair inference is that the court found the fact that the notes had been destroyed, which made admissible oral evidence of their contents.

In a proceeding to establish a will, made by an infirm woman about 74 years old, whereby she bequeathed nearly all of her property to several missionary societies and to her pastor, it appeared that her pastor had great influence over her, that he was deeply interested in the benevolent work of the missionary societies and had frequently urged them upon the attention of the testatrix; that about a year before the execution of the questioned will, he attended the execution by her of another will that he drew and which gave bequests to several of said missionary societies. *Held* that, in the circumstances, the law raised the presumption that the pastor did unduly influence the testatrix, and that this presumption not only cast upon the proponent the burden of showing lack of undue influence, but also established, *prima facie*, the existence of such undue influence, and was sufficient to defeat the will, unless that presumption, which was to be weighed as evidence in favor of the contestants, was overcome by counter proof; and that it was error to refuse a requested instruction to that effect.

The facts that the testatrix requested her pastor to retain the former will until he learned that a later one had been filed in probate court, and that when he learned that a later will had been so filed, he destroyed the former, do not involve the doctrine of spoliation, and the court properly refused a requested instruction on that subject.

APPEAL from a decree of the probate court establishing an instrument as the last will and testament of Caroline W. Rogers. W. H. Dean, proponent; John L. Adams and James W. Adams, contestants. Trial by jury at the June Term, 1906, Addison County, *Miles*, J., presiding. Verdict and judgment for the proponent. The contestants excepted. The contestants excepted to the failure of the court to comply with their eighth request for instructions, which was: "George H. Bailey was the actual and legal custodian of the will of Mrs. Rogers, executed, as he testifies, on July 23, 1904. As such, it was his duty, under section 2357 of the Vermont Statutes, within thirty days after he knew of the death of the testatrix, to deliver the will into the probate court, which has jurisdiction, or to the executor named in the will, if an executor was named. He had no lawful right to destroy or to consent to the destruction of that will, and the law made him liable to a penalty if he did not deliver the will as the statute directs. This law he is conclusively presumed to have known. That will was pertinent and admissible evidence in this trial, on the questions of the mental capacity of, and undue influence upon, Mrs. Rogers. The burning of it by Bailey and his wife, who are both parties in interest in the suit, was a spoliation of evidence which the contestants had a right to use in this trial, and such spoliation was unwarranted, wrongful and against law. Such spoliation gives the jury a right to infer that said will was of such a character that said Baileys believed that if used in evidence on this trial it would make against their interest. The fact that the contestants took the deposition of Caira T. Bailey does not make her their witness, and they are not bound by her testimony. She is an adverse party, and they had a right under the statute to examine and cross-examine her as such party."

*William H. Bliss* for the contestants.

It was error to refuse contestants' eighth request. *Richardson* v. *Fletcher,* 74 Vt. 417, and 76 Vt. 206. "*Omnia presummuntur contra spoliatorem.* When a party destroys or conceals evidence a presumption arises that if such evidence had been produced it would have been against the interest of the party destroying or concealing it, and such destruction or concealment becomes relevant." 2 Am. & Eng. Enc. 2nd Ed. 504; 2 Rapalje

& L. Law Dic. 1212; *Armory* v. *Delamarie,* 1 Smith's L. Cases
(2nd Ed.) 356, 367; *Johnson* v. *Marx Levy & Bro.,* 109 La.
1036; 1 Am. & Eng. Enc. 2nd Ed. 671, note 4; *James* v. *Biou,*
2 Sim. & S. 600; *Eldridge* v. *Hawley,* 115 Mass. 410; Wig. Ev.,
§§285, 291.

*F. W. Tuttle* and *F. L. Fish* for the proponent.

The law is well established in Vermont that the particular
points in the charge or the particular omissions in the charge
must be indicated to the court in order to found an exception
thereon. *Goodwin* v. *Perkins,* 39 Vt. 598; *State* v. *Brunell,*
57 Vt. 580; *Lynds* v. *Plymouth,* 73 Vt. 216; *Morrill* v. *Palmer,*
68 Vt. 1; *Jones* v. *Ellis,* 68 Vt. 544; *Dickerman* v. *Ins. Co.,*
67 Vt. 609.

The charge on the question of undue influence is supported
by many decisions in this State. That a legacy would not have
been made but for the suggestions of another does not prove
incapacity or undue influence. *Foster's Exrs.* v. *Dickinson,*
64 Vt. 233; *Converse* v. *Converse,* 21 Vt. 168; *Thornton* v.
*Thornton,* 39 Vt. 122; *In re Barney's Will,* 70 Vt. 352.

Where the testimony is conflicting a party cannot on special
request, insist that the court shall collate certain conceded and
certain disputed facts and isolating these facts from others
which affect their force, make them the subject of a distinct
branch of his charge to the jury as sufficient, if found, to
authorize the jury to infer undue influence. It is enough if
the court gives the jury the true rule as to what constitutes
such undue influence as to invalidate the will. *Amsden* v.
*Atwood,* 69 Vt. 528.

Where the grantee or other beneficiary of a deed or will is
a person who has maintained intimate relations with the grantor
or testator, or has drafted or advised the terms of the instru-
ment, a presumption of undue influence or of fraud on the
part of the beneficiary has often been applied. But it is not
possible to say that any single circumstance or group of facts is
the invariable mark of such a presumption, or that there is any
uniform rule capable of application apart from the facts of each
case. Wig. Ev., §2503; *Post* v. *Mason,* 91 N. Y. 539; *Carter* v.
*Dixon,* 69 Ga. 82; *Bennett* v. *Bennett,* 50 N. J. Eq. 439; *Yardly*
v. *Cushbertson,* 108 Pa. 395; *Lyons* v. *Campbell,* 88 Ala. 462;

*Tyler* v. *Gardiner*, 35 N. Y. 559; *Tibbe* v. *Kempe*, 54 S. W. (Mo.) 879; Gardner, Wills, 187.

Before the destruction of an instrument will be deemed a spoliation, it must be shown it was done *malo animo*, to injure the adverse party. *Delaney* v. *Tenison*, 3 Brown's Rep. 659. The presumption *contra spoliatorem* does not justify the substitution of mere allegation or conjecture for proof. *Cartier* v. *Troy Lumber Co.*, 138 Ill. 533; *Ins. Co.* v. *Fire Ins. Co.*, 7 Wend. 31; *Arbuckle* v. *Templeton*, 65 Vt. 205.

TYLER, J. This is an appeal by the contestants from a decree of the probate court allowing an instrument as the last will of Caroline W. Rogers of Ferrisburgh. The allowance of the will was contested upon the pleas of the testatrix's mental incapacity and of undue influence exercised over her by George W. Bailey and his wife and daughter. These questions were submitted to the jury by special verdicts, were answered in favor of the proponents, and judgment was entered establishing the will. Two errors are assigned by the contestants in the rulings of the trial court admitting evidence. There are also exceptions to the omission of the court to comply with certain requests to charge and to portions of the charge as given.

The bequests are substantially as follows: $500 to a nephew of the testatrix, $200, $200 and $100 respectively, to three cousins, $100 each to the respective wives of the testatrix's two brothers, $100 to a friend, small amounts of furniture to the two brothers and small amounts of furniture and clothing to other relatives. There is a bequest of $1,000 in trust for the support of one Geo. W. Smith during his life, with remainder, if any, to the Congregational Church Building Society. The other bequests are, $1,000 each to the American Board of Commissioners for Foreign Missions, the Vermont Domestic Missionary Society, the Congregational Sunday School and Publishing Society and the Congregational Church of Ferrisburgh. It is provided in the last bequest that if that church ever ceases to exist, the bequest shall pass to the Vermont Domestic Missionary Society. There is a bequest of the use of the testatrix's house, with certain furniture therein and of about twelve acres of wood land, to Rev. Geo. H. Bailey and his wife and daughter during their lives, provided they occupy the house after they leave the parsonage, pay the taxes and insurance and keep the buildings in repair.

This bequest provides that upon the decease of said Baileys or upon their failure to comply with the above conditions said property shall pass to the American Missionary Association. The residue of the estate is given to nieces and nephews. The whole estate was worth between $8,000 and $9,000.

The testatrix was a widow 72 to 74 years of age when she made the instrument in question, had lived in Ferrisburgh nearly all her life—most of the time with her brother George and her sister Lucy, upon a farm which had been their father's and which they carried on together until the spring of 1903, when Mrs. Rogers moved to a house in the village, then owned by George, but which she purchased after his death in 1904. She presented claims against his estate to the amount of $2,600 which were allowed. She also received from his estate, as his heir, about $4,000.

The testatrix had been from her youth a member of the Congregational church at Ferrisburgh and for many years a teacher in its Sunday school. She was very sick in the spring and summer of 1904, and always after that was weak physically, and the contestants' evidence tended to show that she was mentally incompetent to make a will. The proponents' evidence tended to show that she was competent. She was avaricious and had never been a liberal contributor to any of the associations named in the proposed will, nor to the support of her church. She subscribed for and read the Congregationalist and other religious and missionary publications.

In July, 1892, the testatrix, her brother George and her sister Lucy, made their wills, each giving his or her estate to the others. The bequest in George's will was: "One-half thereof to my sister, Caroline A. Rogers, and the other half part thereof to my sister, Lucy Adams." The proponent introduced evidence tending to show that Caroline expected that the survivor of the three would take the property of the other two. When Lucy died her estate was distributed under her will to Caroline and the heirs of George. George died about two months later and his estate was distributed, one-half to Caroline, and the other half, as intestate estate, to his two brothers, the contestants, and said Caroline, as his heirs at law. After the death of George, Mrs. Rogers insisted that all of his property should go to her. She labored with the probate judge to make a decree to that effect, argued this point persistently with her friends

and neighbors and was never reconciled to the disposition of the estate as made.

1.   The proponents produced a witness who testified under the contestants' exception, that he was present when the three wills were executed, that some person then said, in substance, in Mrs. Rogers' presence, that the survivor of the three was to inherit all their property.   This evidence, though remote in respect to time, might, when considered in connection with what Mrs. Rogers said in the proposed instrument, afford a reason for making no valuable bequests to her brothers.   A clause in the instrument is as follows: "Because of a flaw in the wills of my brother, George M. Adams, and my sister, Lucy A. Adams, my brothers, John Q. Adams and James M. Adams, have taken what I otherwise should have given them in this, my last will, this is the true reason why I do not remember them more liberally in this will.   It is not from any feeling of ill-will, for I have the kindest of feelings toward them."   There was no error in admitting this evidence.

2.   It appeared that between May, 1904, and April, 1905, a Mr. Booth assisted Mrs. Rogers frequently in business matters and that she talked with him at length about making her will, saying that she wished to make provision for said Smith, who had been for a long time a family servant, and leave the residue of her property to her nieces and nephews, and said nothing about making bequests to the church or missionary societies.   In the spring of 1905 she talked with Mr. Collins about drawing her will and said to him that she desired to give small legacies to friends and relatives and was going to make her nephews and nieces her residuary legatees, and said nothing about making any bequest to the church, to missionary societies nor to Rev. Mr. Bailey.

The contestant, John Q., is a farmer in Ferrisburgh and worth about $4,000; the other contestant is worth but little property and is in poor health.   The testatrix had a little trouble with John many years ago, but her relations with her two brothers and their families in recent years had been kindly, and with James and his wife and two sons her relations were intimate and affectionate.

Mr. Bailey was the pastor of the church of which she was a member, and was sixty-seven years old.   He was the son of a lawyer, read some law books in his father's office and had had

experience in drawing wills and knew the requirements of the law for their proper execution. He testified that he drew and attended to the execution of a will for Mrs. Rogers in 1904, and that he and his wife and daughter witnessed it; that Mrs. Rogers gave him a memorandum from which he drew the will; that she wished to give $500 to her nephew Geo. M. Adams, for his name, a thousand dollars to the Vermont Domestic Missionary Society, five hundred dollars to the American Board of Foreign Missions, one thousand dollars to the Congregational Sunday School and Publication Society, one thousand dollars to the Congregational Church of Ferrisburgh and one hundred dollars to a cousin, Miss Lura Kidder. Mr. Bailey testified that Mrs. Rogers gave no direction as to the disposition of the residue of her estate, but that he wrote in a gift of the residue to her two brothers, but that she objected, saying that they had enough, that she would not have their names in the will and directed him to tear off this bequest and write the attestation clause on the back of the sheet, which he did. He testified that this will was executed at the parsonage; that Mrs. Rogers took the will away with her but returned it in a few days and requested him to keep it for her and not destroy it until he knew that a later one, which she intended to make, had been filed in the probate court; that he retained it until after Mrs. Rogers' death, when, upon learning that another will had been filed, he caused the 1904 will to be destroyed; that no one but himself and his wife and daughter ever knew that that will was made. All the evidence respecting that will came from the witnesses thereto.

Mr. Bailey testified that Mrs. Rogers furnished him notes from which to draw the 1904 will, that he could not find them and thought he must have destroyed them, whereupon the court permitted him to testify to his recollection of their contents, to which the contestants excepted. We think the fair inference is, from what appears by the record, that the court found the fact that the notes had been destroyed, which made oral proof of their contents admissible; therefore this exception is not sustained.

Mr. Bailey denied that he advised any of the charitable gifts or the gift to himself and family in the contested will. He admitted, however, that he might have talked with Mrs. Rogers about gifts to missions; that he discussed these matters with members of his congregation; that he sought to get con-

tributions for these objects; that he meant to be faithful in this work of the church, and that "Mrs. Rogers was always speaking about missions." His house was very near hers and he passed hers in going to the post-office; that he called on her frequently as her pastor and spiritual adviser; that he attended to some business matters for her, including the repairing and painting of her house in the spring of 1905; "that their relations were, in one sense, very intimate"; that "Mrs. Rogers told him he would better not draw the will because he was a beneficiary under it." She advised with him about the bequests to himself and to Smith. He went over the will with her before it was completed and suggested that she had omitted the word "Congregational" in the bequest to the Church Building Society and showed her how to amend it. He knew and approved of all the provisions of the will before it was executed.

James M. Adams testified that Mrs. Rogers talked frequently with him in the summer of 1904, wished him to give up his residence in Kansas and come to Ferrisburgh with his family and live with her, said she wished to have the farm remain in the Adams family and intended that his son George should have it, that she intended to give all her property to her nephews and nieces. On one occasion she said that Mr. Bailey had told her that her brothers had no right to any of her property; that before his (James') return to Kansas it was arranged between Mrs. Rogers and himself that as soon as he could arrange his affairs in Kansas he would return to Ferrisburgh and comply with her request.

Mr. Dean, though not a lawyer, was experienced in drawing wills and in settling estates. Mrs. Rogers applied to him in April, 1905, to assist her in making a will and talked the matter over with him several times before the following August when it was executed. She supplied him with memoranda for the will, which he put together, and in July handed it to her completed and substantially like the will now offered, except that it did not contain a bequest to Mrs. Collins. In drawing the will he used nearly the language of the memoranda. He obtained of Mr. Bailey, at Mrs. Rogers' request, the names of the corporations that appear in the will. The testatrix told Mr. Dean that she should copy the will and afterwards told him that she had executed it.

It is evident that Mr. Bailey, by reason of his pastoral relations with Mrs. Rogers, had great influence over her. He was deeply interested in the beneficent work of the associations to which she gave nearly all her property. He discussed these causes with members of his congregation and testified that Mrs. Rogers was always speaking about missions, which obviously means that they talked them over together. He was doubtless diligent in obtaining gifts and legacies for the causes which these associations represent. This was a part of the work of the church and he intended to be faithful to it. No one can doubt from his own testimony that in 1904 and 1905 he frequently urged these causes upon the attention of Mrs. Rogers. It is apparent that he was active in procuring the will of 1904 to be made. He furnished the scrivener with the names of the associations for the present will and "went over it" with the testatrix to be sure it was correct and met his approval.

While we do not doubt that he acted conscientiously, we must remember that Mrs. Rogers had a severe sickness in the spring and summer of 1904, and that her mind was then disturbed, that in July of that year Mr. Bailey drew a will for her which contained bequests to several of the associations that appear in the will in controversy, that after that sickness she was always weak in body; also that there was evidence tending to show that she had at different times declared her purpose to leave her property to her relatives.

It is true that the jury found that Mrs. Rogers was competent to make this will and that she was not unduly influenced by Mr. Bailey, so the remaining question is whether the court submitted the case to the jury under such instructions as the contestants were entitled to.

*In re White's Will*, 78 Vt. 479, the facts were that the testator was a single man, eighty-nine years old, lived alone in his house, was intemperate and eccentric; he went to Shippee's house, four miles from his own, where he remained about three months, was taken sick while there and died. Shippee was his nurse and adviser. A few days before his death Shippee called to his house a scrivener, who wrote White's will and it was duly executed. Shippee was in the room near the testator when the will was executed; he paid the scrivener, directed one of the witnesses to take charge of the will of which he was made executor and sole legatee after paying White's needy son and

only heir five dollars. The estate amounted to $4,300. There was a question whether White went to Shippee's intending soon to return home, or under a contract with Shippee to take care of him through his life for his property. The court instructed the jury that by reason of the relation that existed between the testator and the proponent, as above stated, and because the proponent took all the estate, the burden was upon him to show that he did not unduly influence the testator in making the will; that in the circumstances the law raised the presumption that Shippee did unduly influence White to make the will,—that that was the *prima facie* presumption which did more than to cast the burden of proof upon Shippee,—that it established *prima facie* the existence of undue influence and was sufficient to defeat the will unless that presumption was overcome by counter proof. The court so instructed because it held that the circumstances were such as to raise a suspicion against the will. The instructions given were in accordance with the well considered opinion in *re Cowdry's Will*, 77 Vt. 359. *In re Barney's Will*, 70 Vt. 352, where the relations between the testator and the proponent were confidential, and the proponent drew the will, taking a large bequest, when he would have taken nothing as heir, and needy relatives took nothing, this Court said that the law regarded the transaction with suspicion and cast the burden of proof upon the proponent to show that he did not unduly influence the testator.

In the present case the instructions on this point were as follows:

"The testatrix must have had sufficient mental capacity to execute a will, and it must have been her free act. In making out that it is such, it is incumbent upon the proponent to show by a fair balance of the evidence that it was so executed, and that the testatrix had the requisite capacity. And if you find that Mr. Bailey, her pastor, or his wife or daughter, had to do in counseling, or in causing the will to be written as it was written—it being uncontradicted that he was her pastor and spiritual adviser at the time the will was written, and a legatee óf a considerable portion of her estate, then it would also be incumbent upon the proponent to prove by a fair balance of evidence that it was her free act, and that she was not unduly influenced to make it as it was made. But if you find that Mr. Bailey, his daughter or his wife, did not so counsel, or cause the

will to be written as it was written, then the burden of proving the undue influence rests upon the contestants, and they must show by a fair balance of the evidence that undue influence was used before you can find the undue influence as the contestants claim it. This inquiry as to whether Mr. Bailey, or his wife or daughter, caused the will in question to be written as it was, is important only as it bears upon the question upon whom the burden of proof lies respecting the question of undue influence; and the weight, if any, you may give to it, under all the circumstances in the case, as bearing upon the question of undue influence.''

''You see by these instructions, Gentlemen of the Jury, that that question is important, not only as bearing upon the burden of proof, but it is also important as a piece of evidence upon the question of undue influence. If you find that fact, it does not establish that undue influence was had, but simply fixes the position of the burden of proof, and may furnish some evidence of undue influence, if the circumstances in the case warrant.''

''To state more generally, the burden in any event, rests upon the proponent to prove the execution of the will and the mental capacity, and if you find that Mr. Bailey, his wife or daughter, caused the will in question to be written as it was written, then the burden of proof is upon the proponent to prove that it was not procured by undue influence. If you do not find that fact, then the burden is upon the contestants to prove that it was procured by undue influence, if they would avail themselves of that fact. The burden of proving that Mr. Bailey, his wife or daughter, caused the will in question to be written as it was written, or counselled it to be so written, and in consequence of such counselling it was so written, rests upon the contestants. And if that question is made out by that balance of proof, namely, that these parties did exercise, or did have to do with the writing of that will, the burden of proving the execution, the capacity, and that the testatrix was not unduly influenced, rests upon the proponents. But if that fact is not made out, then only the burden of proving the execution of the will and the capacity of the testatrix rests upon the proponents and the burden of proving the undue influence rests upon the contestants.''

It will be readily seen that while the instruction was correct—that if the jury found that Mr. Bailey had to do with causing or counselling the will to be written as it was written the burden of proof was upon the proponents to show that it was without his undue influence—the jury were not told that that fact raised a suspicion against the will,—that from that fact the law raised a presumption of undue influence, which presumption was of itself a piece of evidence and must be overcome by counter proof. *Bradish* v. *Bliss,* 35 Vt. 326.

What appears in Mr. Bailey's own testimony as to his relations with the testatrix, his influence over her, what he did about this and the former will, with the fact that he took a large bequest—according to the instruction given in the White will case—established *prima facie* the presumption of undue influence and was sufficient to defeat the will unless it was overcome by other proof.

The court in the present case clearly stated to the jury the general rule of law in respect to undue influence, and that if they found a certain fact in the case the burden of proof would shift from the contestants to the proponents. The question is whether the instructions should have gone further upon the undisputed facts. As is said in Wig. on Ev., section 2503, it is not possible to say that any single circumstance or group of facts is the invariable mark of the presumption of undue influence, or that there is a uniform rule capable of application apart from the facts of each case.

We think the instruction should have been in substance as above indicated and that the omission was error. But a question is made whether the contestants have availed themselves of the error. It is true that no exception was taken to the charge as given upon the subject of undue influence, but a compliance with the contestants' sixth request would have met the requirement of the law, which request is:

"The jury are instructed that the relation sustained by Mr. Bailey to the testatrix (viz.: the pastor of her church and her spiritual adviser) was a relation of great trust and confidence, and if you should find that within a short time previous to the execution of the will in question, Mr. Bailey was frequently in conference with the testatrix alone, and was advising with her concerning said will and the disposition of her property by will, then the fact that Mr. Bailey was made a beneficiary

of a substantial estate, and various church and missionary societies in which Mr. Bailey was interested were also made beneficiaries to an extent comprising nearly the entire balance of the property of which the testatrix died seized—then you would be justified in presuming undue influence on the part of Mr. Bailey, subject to be rebutted by evidence that the will was the free and intelligent act of the testatrix.''

The contestants excepted to the omission of the court to comply with this request, therefore the question is properly before this Court.

3. The proponents state the rule correctly, as laid down in *Thornton's Exrs.* v. *Thornton's Heirs*, 39 Vt., at page 163, and in other cases, that a party cannot collate certain conceded and certain disputed facts, and, isolating them from others which would affect their force, request the court to instruct the jury that they may infer undue influence from them, if found. But here none of the facts stated in the sixth request were in dispute. They all appear in the will itself or were testified to by Mr. Bailey, therefore the rule invoked does not apply to this case.

4. Mr. Bailey testified that Mrs. Rogers requested him to retain the 1904 will until he learned that a later one had been filed in the probate court, and that when he learned that fact he caused the former will to be destroyed. Upon these facts the doctrine of spoliation does not apply here and there was no error in the court's refusal to comply with the contestants' requests upon this subject.

*Judgment reversed and cause remanded.*