Manning v. Goodyear Tire & Rubber, No. S1087-03 CnC (Katz, J., July 20, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                           SUPERIOR COURT
Chittenden County, ss.:                              Docket No. S1087-03 CnC


MANNING

v.

GOODYEAR TIRE &
RUBBER CO.


ENTRY

This case is about the evidence required to establish a product liability case where the product itself has been lost. James Manning, a truck mechanic, was injured when the tire he was inflating blew up. He has brought suit against Goodyear Tire & Rubber, Co. claiming that a "zipper failure" design defect in Goodyear tires caused the explosion and his subsequent injuries. Goodyear seeks summary judgment on this claim

because it argues that Manning cannot prove that the tire was a Goodyear and that the alleged "zipper" defect caused the blowout.[1]

Goodyear's first claim for summary judgment focuses on the paucity of Manning's evidence concerning the identity of the tire. This evidence consists of Manning's proffered testimony that he saw a Goodyear logo on the tire moments before it exploded. Manning also proffers three pieces of potential circumstantial evidence that do not necessarily identify the tire as a Goodyear so much as they discredit Goodyear's evidence about the tire's identity.[2] Goodyear's evidence includes several affidavits from Manning's supervisor and co-workers as well as pictures taken soon after the accident that identify the tire as a "virgin" Bridgestone.[3] To further muddy the factual waters, Goodyear also offers rebuttal evidence to Manning's circumstantial evidence including testimony that the invoice was not completed until after Manning's tire blew out.

---

[1] Prior to filing this suit, Manning's employer, Lily Tire, disposed of the tire involved. Neither Manning nor Goodyear was directly responsible for this loss although Goodyear has argued that V.R.C.P. Rule 37 sanctions should apply as Manning did not seek to preserve the tire until 14 months after the explosion. Because of our disposition, there is no need.

[2] This evidence includes an invoice for the job, which Manning was performing at the time of the accident, that indicates the tires involved were retreads rather than "virgin" tires. This would tend to contradict Goodyear's evidence that the tire was a "virgin" Bridgestone.

[3] A "virgin" tire is one that, regardless of its age and condition" has not been retreaded. Retread is a process that cuts away worn tread and replaces it. This is a standard practice for large and medium truck tires and does not involve the sidewalls of the tire where the alleged defect would be located.

Neither party disputes Manning's burden to establish the identity of the tire to a reasonable probability. Perkins v. Vt. Hydro-Electric, 106 Vt. 367, 399 (1934) ("[E]vidence supporting the claim must be more than a scintilla."). Setting aside the factual problems posed by Manning's circumstantial evidence and Goodyear's additional evidence rebutting it, this issue boils down to Manning's testimony that he saw a Goodyear tire and Goodyear's evidence that it was a Bridgestone. Although Goodyear's evidence might be seen to preponderate, the question for us is whether there is a genuine dispute of material fact. White v. Quechee Lake Landowners Ass'n, 170 Vt. 25, 29 (1999). Manning's direct evidence, through his own identification of the tire, creates an issue of material of fact because it gives the jury, if it so chose, a factual hook on which it could hang a determination. For this reason summary judgment on this threshold issue is inappropriate.

The role of the missing tire in Manning's proximate causation case is a different story. Manning claims that he was injured because Goodyear tires have a design defect that causes their sidewalls to come apart in a "zipper tear" when they have been foreseeably misused.[4] This zippering is not exclusive to Goodyear tires but is shared by nearly all makes of truck

---

[4] The particular misuse Manning cites to is under-inflation. Because the tires are usually coupled up on a side of the truck or trailer, it is difficult to detect if only one is under-inflated. The effect is a chronic weakening of the metal cables imbedded within the sidewalls. After time, those cables can fail causing the sidewall to come apart as if the side of the tire were unzipped. The type and length of under-inflation, however, can drastically affect the severity of any zipper tear. See, e.g., Jones v. Goodyear Tire & Rubber, Co., 871 So. 2d 899, 901 (Fla. App. 2003).

tires.  See, e.g., <u>Alvarez v. E.A. Produce Corporation</u>, 708 So. 2d 997, 999 (Fla. App. 1998) (zipper tear on a Michelin tire).  Manning's theory of design defect liability is that Goodyear patented an alternative tire design with strengthened sidewalls but did not adopt the design in any of its tires.[5] Regardless of how we approach the legal implications of a design defect case,[6] Manning must still connect his defect theory to the blow up to show by a preponderance of the evidence that the defect proximately caused him harm.  <u>Webb v. Navistar Int'l Transp. Corp.</u>, 166 Vt. 119, 127 (1996) ("The plaintiff bears the burden of proving that the product is defective, and that its defect was the proximate cause of the harm."); see also 2 D. Dobbs, <u>Law of Torts</u> § 354 (2001).

Let us assume for the moment that Manning can prove that all Goodyear tires share a design flaw in that their sidewalls collapse under the proper under-inflated/flat conditions and that they had a reasonable alternative design that would have prevented or at least reduced this condition.  That still leaves Manning without any proof to connect this

[5] This position avoids the problem design-defect-liability plaintiffs face in the wake of the Restatement Third's adoption of the reasonable alternative design over the consumer expectations test.  Restatement (Third) of Torts: Products Liability § 2(b), cmt. d, g.

[6] The adoption of a reasonable alternative design standard based on risk-utility analysis has moved this area of the law away from § 402A's strict liability standard toward negligence.  See J. Henderson & A. Twerski, <u>Products Liability: Problems & Process</u>, 480–92 (4th ed. 2000);  2 D. Dobbs, <u>The Law of Torts</u> § 357 (2001).  The Vermont Supreme Court has considered this view but has not necessarily adopted it.  <u>Webb v. NavistarInt'l Transp. Corp.</u>, 166 Vt. 119, 134 (1996) (Morse, J., concurring).

defect to this particular tire.  His sole evidence on point is that he observed a zipper-like tear as the tire exploded, knocking him into the tire cage.  But this merely creates a possibility, not a probability, that a design defect caused his injuries.  The problem is that there are any number of intervening and rational possibilities left open even if Manning's evidence is fully accepted.  For example, the tire might have had a manufacturing defect; the retreading company may have negligently checked the tire; the retreading might have been performed negligently creating a sidewall failure; the tire might have sustained some type of latent damage sometime after manufacture outside of under-inflation that caused it to fail; it might have been overinflation on Manning's part.

While none of these examples are any more probable, they illustrate that the current evidence is at best speculative.  As well, the defect is not exclusive to Goodyear tires but one that occurs to all brands and depends on intervening misuse—which may also affect its severity.

Furthermore, Manning seeks to treat all Goodyear tires alike.  As Goodyear demonstrates through its expert affidavits, different years, sizes, and models have different qualities.  While none may have the patented design that Manning cites, they do have differences that affect their susceptibility to zipper tears.  Without the actual tire, Manning or his expert's conclusions on any of these are mere possibilities, and a jury would be forced to speculate to determine the level and type of intervening misuse that caused the tear.  Travellers' Ins. Co. v. Demarle, Inc., 2005 VT 53, ¶ 10 (rejecting plaintiff's strong mathematical possibility as sufficient for summary judgment).  As the Vermont Supreme Court wrote:

> Evidence which merely makes it possible for the fact in issue to be
> as alleged, or which raises a mere conjecture, surmise or suspicion,

> is an insufficient foundation for a verdict. There must be substantial evidence fairly and reasonably tending to support the plaintiff's claim to make a case for the jury.

Fuller v. City of Rutland, 122 Vt. 284, 289 (1961).  The situation in this case is the same.

Plaintiff would have the jury conclude that in the mere fraction of a second, which is all it took for the tire to explode and push him back, seriously injuring him, he was nevertheless able to observe and comprehend both what was occurring and its cause.  He not only observed it but reliably remembers it.  In that startling and ultimately painful and injurious instant, Plaintiff observed the sidewall

- open up
- in the exact manner of a zipper failure
- with no cause or aid external to the tear.

"The question is not merely whether there is any evidence to this effect, but whether it is of such quantity and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof."  Perkins v. Vt. Hydro-Electric, 106 Vt. 367, 399 (1934).  Given all the physical abuse to which a truck tire may be subjected, Plaintiff's multi-faceted flash recollection does not meet the standards of either Perkins or Travellers'.

Finally, it is important to note that our conclusions here do not involve the doctrine of spoliation.  See West v. Goodyear Tire & Rubber, Co., 167 F.3d 776, 779 (2d Cir. 1999).  Notwithstanding Goodyear's arguments about Manning's delay, neither party was directly responsible for the loss of the tire at issue here.  To that extent, the conventional application of spoliation as a sanction of negative inferences against the

spoiling party would appear to be inappropriate.  See, e.g., <u>In re Roger's Will</u>, 80 Vt. 259 (1907); 29 Am. Jur. 2d <u>Evidence</u> § 244.  At the same time, no particular positive inferences should be drawn for either side from the missing tire.  This means that the missing tire is simply that, a missing piece of evidence.  Treating it as such, we have only drawn what logical inferences we can from the remaining pieces toward each party's ultimate burden of proof.

Based on the foregoing, defendant Goodyear Tire and Rubber's motion for summary judgment is granted.  Case is dismissed.

Dated at Burlington, Vermont_____, 2005.