## In Re Luke White's Will.

January Term, 1906.

Present: TYLER, MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed April 23, 1906.

### *Wills—Undue Influence—Requests to Charge.*

Where, in a proceeding to establish a will, the court instructed the
jury that, in the circumstances of the case, the law raised a pre-
sumption of undue influence by the proponent, and that this pre-

sumption was evidence and established, *prima facie*, the fact of such influence, the contestant had no ground to complain that the court failed to grant his request for the instruction that the jury "are at liberty to infer" that the proponent had practiced fraud and exercised undue influence, or either, to procure the execution of the will.

Contestant's request for the instruction that certain facts in the case "taken together, constitute fraud and deception, in law," on the part of the proponent in procuring the testate to execute the instrument in question, and that therefore said instrument is not the last will of the testate, was properly refused, for a compliance therewith would, in effect, have taken the case from the jury.

Contestant's request for the instruction that, from the facts that proponent procured the draftsman of the instrument, was the testate's confidential adviser, and took the principal estate, "the jury are at liberty to infer" that he was attempting to practice a fraud upon the testate in securing the provision made for him in the instrument, subject to be rebutted by evidence that the will was the free and intelligent act of the testate, *held* fully complied with.

APPEAL from a decree of the probate court establishing an instrument as the will of Luke White. George Shippee, proponent, and George Rice, contestant. Trial by jury at the September Term, 1905, Windham County, *Rowell*, J., presiding. Verdict and judgment for the proponent. The contestant excepted.

The bill of exceptions discloses only the charge of the court, and contestant's exception to the alleged failure of the court to comply with the three requests mentioned in the opinion.

*William Davenport, Herbert G. Barber,* and *Frank E. Barber* for the contestant.

The contestant's second request should have been granted. *Davenport* v. *Johnson,* 182 Mass. 270; *Wade* v. *Pulsifer,* 54 Vt. 61; *Waller* v. *Armisteads, Admrs.,* 21 Am. Dec. 594, 2

Leighs. Rep. (Va.) 11-16; *Pool* v. *Pool,* 35 Ala. 12; *Meek* v. *Perry,* 36 Miss. 190; Bigelow, Fraud, 191; *Tyler* v. *Gardiner,* 35 N. Y. 592; *Houghton* v. *Houghton,* 15 Beav. 299-300; *Breed* v. *Pratt,* 18 Pick. 115; *Hannah* v. *Sparks,* 43 Am. Dec. 132; *Wily* v. *Tidal,* 5 Del. Ch. 194; *Garvens, Admr.* v. *Williams,* 44 Mo. 465.

*Charles S. Chase,* and *Clarke C. Fitts* for the proponent.

TYLER, J.   This case does not present a statement of the facts that appeared in the trial, nor what the evidence on the respective sides tended to show.   No exception was taken to the charge as given.   The case comes here only upon the contestant's exception to the refusal of the court to charge as requested.   We may assume that the facts stated in the re-requests were those most favorable to the contestants; they may be summarized as follows:

Luke White, the testator, was unmarried; he owned and occupied a farm in Colerain, Massachusetts, and had lived upon it many years, doing his own cooking and housework; he had long been intemperate in the use of intoxicating liquors and was, in some respects, eccentric.   On Nov. 8, 1904, he went to the house of the proponent, Shippee in Halifax, this State, about four miles from his home, leaving his furniture in his house, and remained at Shippee's until his death, which occurred Jan. 29, 1905.   His property, including $3,500 deposited in Massachusetts Savings Banks, amounted to $4,300.

Shippee was White's nurse and adviser during this period of nearly eight weeks, and on or about Jan. 20 he had access to his money and bank-books.   On Jan. 27, by Shippee's request, one Faulkner, a man unknown to White, went to Shippee's house and drew the will and it was executed by the

testator.   Shippee paid Faulkner for his services, and, without the testator's request or knowledge, directed Faulkner to hand the will to A. W. Thomas, the attending physician, who, with one Bancroft and a brother-in-law of Shippee, had witnessed the will.   None of White's relatives were informed of his condition nor of his intention to make a will, and it was drawn with no one's advice but Shippee's.

The contestant was White's nephew and only legal heir; he was fifty-nine years old and in needy circumstances; his relations with his uncle had been pleasant but not intimate.

The testator was eighty-nine years old when he died; he had been confined to the house by sickness after Dec. 15 and was very sick the last fifteen days of his life.

Shippee was in the room when the will was executed and so near the testator that they could see each other's faces. Shippee was sole executor and the residuary legatee after a bequest of five dollars to said nephew.   After the will was executed he took from the testator's trunk his bank-books representing about $3,500.   Shippee did not suggest to the testator his making bequests to his relatives for the reason, as he testified, that he wanted all the property.

The contestant, after stating the foregoing facts, in substance, requested the court to instruct the jury as follows:

1.   "You are at liberty to infer that George Shippee had practiced fraud and exercised undue influence, or either, to procure the execution of said instrument."

2.   "The above facts and acts taken together, constitute fraud and deception, in law, on the part of said George Shippee, in procuring said White to execute the instrument, and therefore the instrument is not the last will of Luke White, and the contestant is entitled to a verdict, disallowing the instrument as the last will of Luke White."

3. "The jury are at liberty to infer from the facts that George Shippee procured the draftsman of the instrument, that he took the principal estate and was the confidential adviser and agent of Luke White, as testified to by him—that he was attempting to practice a fraud upon Luke White in securing the provision made for him in the instrument, subject to be rebutted by evidence that the will was the free and intelligent act of Luke White."

The court charged fully in respect to the execution of the will, the degree of mental capacity required of the testator to make a valid will, and upon the subject of undue influence. The judge said:

"Now in this case, and only for the purposes of this case, I charge you that, by reason of the relation that existed between George Shippee and Mr. White for a while before and at the time of the execution of the will, and because he takes under the will, if the will is valid, all the testator's estate save five dollars willed to George Rice, the burden is upon the plaintiff to show that he didn't unduly influence Mr. White in the making of the will. The law upon that subject as declared by a very recent decision of our Supreme Court is this, 'that the presumption of undue influence which the law raises in the circumstances, (and the law raises the presumption that Shippee did unduly influence White to make the will)—that is the *prima facie* presumption, and that presumption does more than to cast the burden of proof upon Shippee —it establishes *prima facie* the existence of undue influence and is sufficient to defeat the will unless and until that presumption is overcome by counter proof; and that presumption must be used as a piece of evidence, and thrown into the scales and weighed as such in favor of the contestant.' So that is the precise position in which the law puts that issue to start

with. In the circumstances of this case, to which I have ad-
verted, the law makes this presumption because these circum-
stances are such as to raise a suspicion against the will. But
as I have said upon all these issues, all the plaintiff has to
do in order to make them out in his favor is to do it by a
fair balance of the testimony—so that you can fairly say in
your own minds, that upon all the testimony in the case bearing
upon these several issues, on the whole, you more think that
the issues are in favor of the plaintiff than against him. Un-
less you come to that degree of assurance in your mind, you
cannot find these issues nor any of them in his favor."

Later in the charge the court presented to the jury the
controverted question whether White went to Shippee's house
under an agreement, as the latter claimed, that White should
pass the remainder of his life there and that Shippee should
have his property, or whether he went there, as the contestant
claimed, intending soon to return to his own house, the de-
cision of which question might aid the jury in deciding the
question of undue influence.

It must be seen that the first request was complied with;
indeed the charge was more favorable to the contestant than
the request itself, for the jury were instructed that, in the
circumstances of the case, the law raised the presumption of
undue influence by Shippee, and that that presumption was
evidence and established *prima facie* the fact of undue influ-
ence.

The second request could not have been complied with
for it would in effect have taken the case from the jury, and,
as the court charged, it was a question for the jury to deter-
mine whether or not the presumption of undue influence had
been overcome by counter proof. The third request was fully
complied with. If the making of the will was the carrying

out of the alleged agreement between White and Shippee there was no fraud in the acts of the latter. If he found that White was near the end of his life, he had a legal right to be active in procuring the will to be made and executed and to be personally present to see that it was properly executed, provided he did not interfere with the free operation of the testator's mind. But, on the contrary, if Shippee took advantage of the testator's enfeebled condition and unduly influenced him to make the will, then fraud was used by Shippee, and the will was not entitled to be allowed. This was a question for the jury, and it was submitted to them under careful instructions by the court. The facts proved in respect to the proponent's acts were, in the eye of the law, *suspicious,* and the jury were so instructed. *Re Wheelock's will,* 76 Vt. 235.

*Judgment affirmed and certified to Probate Court.*