. In Re Edgar F. Watkins' Will.

January Term, 1908.

Present: Rowell, C. J., Tyler, Munson, and Watson, JJ.

Opinion filed March 2, 1908.

*Wills—Undue Influence—Burden of Proof—General Rule—
Suspicious Circumstances—Presumptions—Confidential Re-
lations—Husband and Wife—Wife Sole Beneficiary.*

In a proceeding to establish a will the burden of proof on the issue
of undue influence is generally on the contestant.

But where the circumstances connected with the execution of the
will are such as the law regards with suspicion, undue influence
is presumed, and the proponent must affirmatively show the
contrary.

The mere fact that the testator and the sole beneficiary under his will
were husband and wife does not cast on the proponent the burden
of showing that the testator was free from undue influence.

In a proceeding to establish a will that gave the testator's whole estate,
amounting to $22,000, to his wife, where it appeared that the
testator was stricken with apoplexy on July 10, executed the will·
on July 22, and died October 1, following; that he and his wife were
then 72 and 69 years of age, respectively, were in the fiftieth year
of their married life and without issue; that their life had been
mainly one of saving, in which she had done her part; that the
will was not proposed by her, nor made on her initiative, nor by
one acting independently of the testator; that there was nothing
suspicious in the selection of the witnesses to the will, nor in the
circumstances attending its execution; that there was nothing
unnatural in the attendance and care that the testator had during
his illness; and that his property and business had not been in the
hands of his wife in a way that gave her knowledge thereof
not possessed by him; the court properly refused to instruct the
jury that, in the circumstances, the law presumed undue influence,
and that the proponent must affirmatively show the contrary.

Appeal from a decree of the probate court establishing an
instrument as the last will and testament of Edgar F. Watkins.

Lucinda Watkins, proponent. Betsy E. Scott and F. W. Watkins, contestants. Trial by jury at the June Term, 1907, Windsor County, *Waterman*, J., presiding. Verdict and judgment for the proponent, who is the surviving wife of the testator, sole beneficiary under his will, and executrix thereof. The contestants excepted.

The contestants requested the court to instruct the jury that: "In the case at bar, Mrs. Lucinda Watkins was a person in charge of the business affairs, the property and person of Edgar F. Watkins on the 23rd of July, 1905, at the time of the execution of the will, and he was thus dependent upon her; and it further appearing that by the terms of the alleged will she will take all his property and become the executrix of his will, the burden is upon the proponent, Lucinda Watkins, to show that she did not unduly influence Mr. Watkins to make said will in her favor, that is the *prima facie* presumption, and that presumption does more than to cast the burden of proof upon her—it establishes *prima facie* the fact of the existence of undue influence and is sufficient to defeat the will unless and until that presumption is overcome by counter proof, and that the presumption must be used as a piece of evidence and thrown into the scales and weighed as such in favor of the contestants." The Court refused so to instruct, to which the contestants excepted. The opinion states the case.

*Davis & Davis*, and *J. G. Sargent* for the contestants.

In the circumstances, the contestants were entitled to the requested instruction. After his illness, the testator and all of his property were in the keeping and control of his wife. The relation was the most sacred and confidential known to either nature or the law. The case was, therefore, clearly within the doctrine of the following cases: *Barney's Will*, 70 Vt. 352; *Wade* v. *Pulsifer*, 54 Vt. 45; *In re Cowdry's Will*, 77 Vt. 362; *In re Wheelock's Will*, 76 Vt. 235; *In re Rogers' Will*, 80 Vt. 259; 4 Wig. Ev. §2503; *Smith's Will*, 95 N. Y. 517; *Carroll* v. *Hause*, 48 N. J. 269; *Dale* v. *Owen*, 38 N. J. Eq. 274; Taylor Ev. §160; *Marx* v. *McGlynn et al.* 88 N. Y. 371; *Barnard* v. *Gantz et al.* 140 N. Y. 256; *Tyler* v. *Gardner*, 35 N. Y. 559; *Delafield* v. *Parish*, 25 N. Y. 9; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Doherty* v. *Lacy*, 168 N. Y. 213; *Walter* v. *Armisteads*, 2 Leigh

(Va.) 11; *Gardner* v. *Williams et al.* 44 Mo. 465; *Houghton* v. *Houghton,* 15 Beav. 299; *Meek* v. *Lerry,* 36 Miss. 190; *Wiley* v. *Teddel,* 4 Del. Ch. 190; *White's Will,* 78 Vt. 480.

*Hunton & Stickney* for the proponent.

The court properly denied the requested instruction. To reverse the ordinary rule, the circumstance must be such as to lead justly to the inference that undue influence was employed, and that the will did not express the real wishes of the testator; *Brick* v. *Brick,* 66 N. Y. 144; and it is submitted that in the absence of evidence tending to show that the will is not the true expression of the testator's desires as to the disposition of his estate, after his decease, the burden of proving undue influence rests upon the party asserting it. *Barry* v. *Butlin,* 2 Moore, P. C. 480; *Tyrell* v. *Plainton et al.* 1894, L. R. Prob. 151. In the latter case it is said: "Whenever a will is prepared under circumstances which raise a well grounded suspicion that it does not express the mind of the testator, the Court ought not to pronounce in favor of it unless that suspicion is removed."

The general rule in cases when undue influence is claimed is laid down in *Denny* v. *Pinney,* 60 Vt. 524. This rule is qualified owing to the peculiar-circumstances of the case *In re Barney,* 70 Vt. 352, where many cases are cited and reviewed. Many considerations may be involved in the determination of the question of where the burden of proof rests, as, for instance, quality and condition of the testator's mind at the time of the execution of the will. *In re Wheelock's Will,* 76 Vt. 235; *Rollwagen* v. *Rollwagen,* 3 Hun. 151, 63 N. Y. 504. The circumstances attending its preparation and execution. *Bryant* v. *Pierce,* 95 Wis. 331; *Drake's Appeal,* 45 Conn. 9; *Rusling* v. *Rusling,* 36 N. J. Eq. 603. The character of the will as being unjust, capricious and unnatural. *Gilbert* v. *Gilbert,* 22 Ala. 529; *Holman's Will,* 42 Ore. 345, 70 Pac. Rep. 908.

But here is nothing to modify the general rule. In *Mason* v. *Williams,* 53 Hun. 398, 402, 6 N. Y. Supp. 479, 481, where a testator gave all his property to his wife to the exclusion of his heirs, the Court said, "We are not prepared to sanction the doctrine that a devise to the wife by her husband is presumptively fraudulent." It is universally held, "that a man shall make

liberal provision for his wife is not unnatural but is a duty.''
*Orth et al v. Orth et al.* 145 Ind. 184, 208; *In re Lyddy's Will,*
5 N. Y. Supp. 636; *McMechen v. McMechen,* 17 W. Va. 683;
*Herbert v. Berrier,* 81 Ind. 1; *Webber v. Sullivan,* 58 Iowa 260.

MUNSON, J.   As a general rule the contestant of a will has
the burden of proof on the question of undue influence.   *Denny
v. Pinney,* 60 Vt. 524.   But when the circumstances connected
with the execution of the will are such as the law regards with
suspicion, undue influence is presumed, and the proponent must
show affirmatively that the will was not procured by it.   *Re
Barney's Will,* 70 Vt. 352.   This Court has applied the latter
rule where the will was drawn by the principal beneficiary, and
its execution was attended to by the beneficiary's father, and
the circumstances were such as made the disposition of the
property unnatural; *Re Barney's Will,* 70 Vt. 352; where the
principal beneficiary under the will was the guardian of the tes-
tatrix before and at the time it was made; *Re Cowdry's Will,*
77 Vt. 359; where the property was given to one not a relative,
who had the sole charge of the testator in his illness, and ad-
vised the making of the will, and procured the attendance of
the draftsman, and was present at the execution; *Re White's
Will,* 78 Vt. 479; where the bequests were mostly to religious so-
cieties in which the testatrix' pastor felt a deep interest and the
needs of which he had frequently urged upon her, and were
substantially the same as in a will drawn by the pastor shortly
before, and the testatrix had the last will drawn by another
because the pastor was to be made a beneficiary, but submitted
it to him for his advice before the execution; *Re Rogers' Will,*
80 Vt. 259.   The contestants excepted to the refusal of the court
to apply the rule here.

The will gives the testator's entire estate, amounting to
$22,000, to the testator's wife.   At the time it was made the
testator and the beneficiary were seventy-two and sixty-nine
years of age respectively, and were in the fiftieth year of their
married life.   All their issue had died in childhood.   Their life
had been mainly one of labor and saving, in which the wife had
done her part.   She had long been accustomed to act for her
husband in his absence in such matters as required attention,
and in so doing had taken and receipted for moneys due him.

Mr. Watkins sold his farm in January, 1899, and afterwards bought a house in South Royalton to which he removed that spring. The contestants introduced a witness who testified that soon after the farm was sold Mrs. Watkins told her that she had asked her husband to make a will, saying that in case of his death she would inherit but one half of his property, and that he had said "that would be all she could use"; that a little later Mrs. Watkins told her that her husband had met one of his cousins at Woodstock and said they were very nice people; that when the South Royalton house was bought Mrs. Watkins mentioned that her sister's husband had bought a house and deeded it to his wife, and asked her if she did not think Mr. Watkins ought to deed her the place he had bought. The contestants also introduced a cousin of Watkins, who testified that she often visited him while he was living on the farm, and that on two of these occasions, two or three years apart, Mrs. Watkins wished her to talk with him about his making a will, and that on both occasions she advised him to make one, but that he made little or no reply.

Watkins was stricken with apoplexy on the tenth day of July, 1905, executed his will on the twenty-third day of July, and died on the first day of the following October. The circumstances connected with the execution of the will are given by Mr. Whitham and Dr. Fish, two of the subscribing witnesses, whose testimony is referred to. About the first of June, 1905, the testator saw Whitham at his office with reference to the making of his will, and told him that he wanted to give all his property to his wife and make certain further provisions, of which matters Whitham took minutes. He saw Whitham on the street soon after this and asked him to come to the house and draw the will, but Whitham could not attend to it then. He saw Whitham again during the week commencing July second, and it was then arranged that Whitham should attend to the matter the following week. Watkins' attack occurred on Monday of the week agreed upon, and the fact became known to Whitham. About a week later, and after hearing further regarding Watkins' condition, Whitham informed Mrs. Watkins by messenger of what her husband had arranged to have done, and was requested to come to the house. On his arrival Mrs. Watkins asked him what she ought to do about the matter, and

he advised her in regard to it; and in line with his advice and at her request he saw Dr. Fish, who was the attending physician, and it was then arranged that the doctor should keep a careful watch of Watkins' mental condition, and that Whitham should go to the house for the purpose of drawing his will when notified by the doctor. Whitham received such notice July twenty-third, and went to the house, taking with him his minutes of the instructions previously received. After some general conversation with Watkins, Whitham referred to the fact that they did not get around to make the will, and asked him if he would like to make it then; and Watkins looked up promptly and said "Yes" with emphasis. Whitham then asked him if he remembered the conversation they had had about it, and Watkins said "Yes"; whereupon Whitham said he would draw the will then, and proceeded to do so, having before him the minutes he had taken. Dr. Fish came in while this was being done. Whitham read the document to Watkins when completed, and said: "This gives it all to your wife, is that the way you want it?" to which Watkins replied "Yes—all right." After the execution and attestation, and as the witnesses were about to leave, the testator said: "I am glad that is done." Mrs. Watkins was in and out of the room while this was going on, and was present when the will was executed. The witnesses say that the testator's mind was clear, and that he comprehended all that was said and done.

Dr. Fish testified regarding the testator's illness that he reached Watkins a few minutes after the seizure and found him only partially conscious, that he rallied some before he left, and that from that time until after the will was made there was a gradual improvement; that within twenty-four hours after the will was made he was taken with a severe bowel trouble which affected his mind unfavorably, and that he remained in a cloudy mental condition two or three weeks; that after this there was a period of marked improvement, which continued until two or three weeks before his death, when he became suddenly worse. A witness produced by the contestants testified that he called at the house "as near as he could tell along about the twentieth of July," and was told by Mrs. Watkins that her husband was unconscious and not able to see any one; that a few days later he called again and was told the same

thing by the nurse; that he called again awhile afterwards and was told by Mrs. Watkins that Mr. Watkins could not see anyone.

The case is clearly distinguishable from those above referred to. The disposition of the property was not unnatural. The will was not prepared by the beneficiary. It was not made upon her initiative, nor through the instrumentality of one acting independently of the will of the testator. There was nothing suspicious in the selection of the witnesses, nor in the circumstances immediately surrounding the transaction. There was nothing unnatural in the attendance and care that the testator had during his illness. The testator's property and business affairs had not been in the hands of the beneficiary in a way that gave her knowledge of them not possessed by the testator. It is not urged, nor even suggested, that the relation of husband and wife is in itself a relation that calls for an application of the rule. There is certainly no analogy between this relation and that of guardian and ward. The latter relation is based upon a legal recognition of the weakness of one party and the authority of the other. The situation presented to the trial court was not one that the law regards with suspicion, and its refusal to apply the rule in question was correct.

*Decree affirmed and ordered certified to the Probate Court.*