STATE *v.* GEORGE W. BOLTON.

May Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 2, 1917.

*Trial—Improper Remarks of Counsel—When Harmless—Criminal Trials—Notice to Respondent to Produce Evidence—When not Prejudicial—Charge—Construction—Limiting Evidence to its Impeaching Effect—Requests for Instructions—When Based upon Mistaken View of Evidence.*

Improper remarks of counsel in his opening statement to the jury are rendered harmless when ruled out by the court and unreservedly withdrawn by counsel.

In a prosecution for procuring an abortion upon a girl of eighteen, the fact that respondent, after the operation, allowed the girl to go out into the world without advice is proper for the consideration of the jury as bearing upon the question whether the abortion had been caused in order to save her life.

A request by the State's Attorney that the respondent in a criminal prosecution should produce a printed card, which is promptly withdrawn, does not constitute prejudicial error.

In considering an exception to a charge to the jury, the Supreme Court will consider together all that the court said in determining whether error was committed.

Charge to the jury examined, and, *held*, not to infringe the constitutional provision that no person can be compelled to give evidence against himself, nor the statutory provision that the refusal of a respondent to testify shall not be considered as evidence against him.

It is unnecessary for the trial court to remind the jury, in the charge in a criminal case, that it is their duty to respect their oath.

A request for an instruction, in a criminal prosecution, wherein respondent did not testify, that "the respondent is to be treated as though his mouth was closed by the law," was properly refused.

In a prosecution for procuring an abortion, it is proper for the trial court in its charge, to limit to its impeaching effect, evidence introduced by respondent of the statement of the woman that she was

not able to help herself, and desired the witness, a physician, to perform an abortion upon her, such evidence having been received without objection, or limitation, and these facts having no tendency to show that respondent did not perform the operation as claimed by the State.

In a prosecution for performing an abortion, charge of the trial court, that as to whether the operation was necessary to save life the jury should take into consideration the testimony of various witnesses, *held*, without error.

No error can be imputed to the failure of the trial court to comply with a request for an instruction based upon a mistaken view of the evidence.

PROSECUTION for procuring an abortion, under P. S. 5889. Plea, not guilty. Trial by jury at the December Term, 1916, Caledonia County, *Butler,* J., presiding. Verdict, guilty, and judgment on verdict. Respondent excepted. The opinion states the case.

*Dunnett & Shields* for respondent.

*James B. Campbell,* State's Attorney, for the State.

HASELTON, J. This was a prosecution of the respondent for procuring an abortion contrary to the provisions of P. S. 5889. The evidence on the part of the State tended to show that in June, 1916, one Anna Gunderson, a girl eighteen years of age, was pregnant, and that the respondent performed an operation upon her for the purpose and with the intent of causing a miscarriage, the same not being necessary to preserve her life. On trial the respondent was found guilty and sentenced. Upon the filing of exceptions by the respondent, execution was suspended.

In his opening statement to the jury the State's attorney said, in substance, that after performing the operation, the respondent left Miss Gunderson without any advice to go out in the world; that such was the tendency of the State's evidence on a former trial. Exceptions being taken the court ruled these statements out as absolutely immaterial and counsel for the State unreservedly withdrew them. Nevertheless the respondent relies upon his exceptions. If evidence of the sort indicated would have been inadmissible, the statements were so treated by the court and

counsel as to render them harmless. But as bearing upon the question of whether or not the respondent, if he had performed an abortion, had performed an innocent act to save life, his leaving this young girl of eighteen to go out into the world without advice, if he did so, would have been a circumstance to be considered. The exceptions to the opening statement were without merit.

The evidence tended to show that Miss Gunderson's home was in Bridgeport, Connecticut; that finding herself pregnant, she, with a Miss Hayes, came to St. Johnsbury in this State, where the home of Miss Hayes was; that having learned of the respondent and received instructions as to where to find him, she and Miss Hayes betook themselves to his home in West Burke; that Miss Gunderson took along by way of introduction the business card of a Mr. Fifield of St. Johnsbury, a card which she handed to the respondent and left with him; that after seeing the card and hearing what Miss Gunderson had to say, the respondent performed the operation in question in the presence of Miss Hayes.

Mr. Fifield was a witness for the State, and after he had testified as to his business card, he was asked what was said on it. Objection being made in behalf of the respondent that the card was the best evidence, and the court having sustained the objection, counsel for the State said: "Well, as the evidence stands, the card was delivered over to the respondent, Bolton, so we ask him to produce the card." The respondent's counsel asked for an exception. The court said: "An exception to what," and upon being told that the State's counsel had asked for the production of the card, and that an exception was taken to the demand upon the respondent for the production of the card, the court allowed the exception. Thereupon the counsel for the State "waived" his request, and the respondent's counsel insisted upon his exception notwithstanding the so-called "waiver."

When the counsel for the State said he waived his request for the production of the card, he in effect withdrew it, and the jury had no occasion to understand that the respondent was put in the position of refusing to produce what the State had a right to demand. Although a technical waiver is in law the intentional relinquishment of a known right, that is, a right known to the person who makes the waiver, it is unreasonable to suppose that the colloquial language used by the State's attorney meant

to the jury or any one else anything more than that the request was withdrawn. And as it was withdrawn promptly no prejudicial error resulted.

The cases particularly relied on by the respondent are not much in point. One of these cases is *McKnight* v. *United States,* 115 Fed. 972, 54.C. C. A. 358. There by direction or suggestion of the court the district attorney demanded of the respondent the production of a highly incriminating document, and the court persisted through a long colloquy with the respondent's counsel that such course was proper. Error was found by the Circuit Court of Appeals. Another case relied on by the respondent is *State* v. *Merkley,* 74 Iowa 695, 39 N. W. 111. In that case the court itself questioned respondents, who had not offered themselves as witnesses, as to their knowledge of the whereabouts of certain paper, and this course was taken against objection and exception by the respondents. *Gillepsie* v. *State,* 5 Okl. Cr. 546, 115 Pac. 620, 35 L. R. A. (N. S.) 1171, Ann. Cas. 1912 D, 259, is another case somewhat relied on by the respondent in his brief. There the court against the objection of the appellant deliberately permitted counsel for the State to demand of the appellant certain letters. The demand was once or twice withdrawn for the purpose of reframing it, and when counsel finally got it in the shape he wanted it in, the trial court ruled against the demand solely for the reason that the letters had not been shown "to have any connection with the facts in the case on trial," when, as the Supreme Court of Oklahoma shows, they were by unmistakable inference material.

In the case at bar the request for the production of Mr. Fifield's card was so promptly withdrawn that it would be unfair to say that the respondent was put in the position of refusing to produce it or admitting that he had it.

In this case the court charged the jury that the respondent by his plea of not guilty put in issue every material fact; that by the rule of law in criminal cases, which the court correctly laid down, the State must establish its case, or the respondent must be acquitted; that the jury were not to try the case upon something that had not appeared, but upon the evidence which they had heard in court. The court then said: "Most of the evidence introduced on the part of the State is unexplained except by the circumstances which have been called to your attention in argument, for the respondent has not seen fit to go upon

the stand and testify in his own behalf. The fact that he has not testified is not to be taken against him, because he is not bound to go upon the stand as a witness and testify.    He has a right to stand upon his denial and the presumption of innocence.''

The respondent excepted to the part of the charge above quoted, and particularly to that portion of the quotation which reads: ''Most of the evidence introduced on behalf of the State is unexplained except by the circumstances which have been called to your attention in argument, for the respondent has not seen fit to go upon the stand and testify as a witness in his own behalf.''   Taking this passage by itself, and construing it according to the rules of grammar, the use of the word ''for'' was objectionable.    But we are to consider together all that the court said in determining whether error was committed.    In *State* v. *O'Grady,* 65 Vt. 66, 25 Atl. 905, the court in its charge said: ''The evidence of the state is uncontradicted by any evidence on the part of the respondent.   The respondent has not testified. The mere fact that he has not testified is not to be taken against him.   You have no right to consider that fact, but you have a right to consider the fact that the evidence introduced by the state has not been contradicted only so far as it may be contradicted in and of itself.''   In that instruction the word ''mere'' was fully as objectionable as the word ''for'' in the instruction under consideration.   But the instruction in the O'Grady case, considered as a whole, was held to be free from error.   The respondent undertakes to distinguish the instruction in the O'Grady case from the instruction here, because the court there told the jury that they had no right to consider the fact that respondent had not testified.   But to say that, and to say, as was said here, that the fact that the respondent had not testified was not to be taken against him, are equivalent in meaning and force.

In *State* v. *Cameron,* 40 Vt. 555, the court was requested to charge the jury that the fact that the respondent had not taken the stand as a witness in his own behalf was not even to be thought of or taken into consideration by the jury to the prejudice of the respondent.   This request the court refused saying he could not prevent their thoughts, but charging ''that the fact of the respondent's not taking the witness stand should not be taken against him, the law only giving him the privilege of choice; and if the respondent did not choose to testify, it must

not be taken against him." This Court, Judge Steele writing the opinion, found no error in this instruction taken as a whole, though the remark, that the trial court could not control the thoughts of the jury, was disapproved of.

Our constitutional provision in point is that no person can in a criminal prosecution be compelled to give evidence against himself; and our statutory provision is that a person charged with crime shall be a competent witness at his own request, and not otherwise, and that his refusal to testify shall not be considered as evidence against him. Neither the constitutional nor the statutory provision was infringed by the charge of the court.

The respondent requested the court to charge as follows: "In this case the respondent is to be treated as though his mouth was closed by the law, and you are not at liberty to infer anything from his silence. It is your duty rather to respect your oath and to try this accusation solely upon the evidence which is placed before you." The respondent excepted to the failure of the court to comply with this request.

In the course of its charge the court, as we have seen, told the jury that they were to determine the case upon the evidence which they had heard in court and not upon something that had not appeared, and that the fact that the respondent had not testified was not to be taken against him. There was no occasion for telling the jurors that it was their duty to respect their oath. Such a practice, once begun, would cheapen the oath itself.

So the only part of this request for consideration is the claim that the court should have said to the jury: "In this case the respondent is to be treated as though his mouth was closed by the law." In *State* v. *Cameron*, 40 Vt. 555, this Court found no error in a charge which said that the law gave the respondent the privilege of choice, and that if the respondent did not choose to testify that fact must not be taken against him. This interpretation of the statute does not call for a charge that the respondent's mouth is closed by the law, and in fact it is not, for the statute permits him to open it if he chooses. The very claim which the respondent makes here was ruled against in *People* v. *Enright*, 256 Ill. 221, 99 N. E. 936, Ann. Cas. 1913 E, 318. Other cases in point are *Fulcher* v. *State*, 28 Tex. App. 465, 13 S. W. 750, where *State* v. *Cameron* is alluded to, and *Thrawley* v. *State*, 153 Ind. 375, 55 N. E. 95.

Other exceptions noticed little if at all in oral argument, are

briefed, and can best be considered after a general outline of the case has been made.

The testimony on the part of the State tended strongly to show that an operation to effect a miscarriage, not necessary to save life, was procured by the use of some instrument.

The testimony of Mr. Fifield was to the effect that on the morning of June 17, 1916, he was seated near Miss Gunderson and Miss Hayes in a car from which they got off at West Burke, and that on the train Miss Gunderson told him she was going to West Burke to the respondent, Dr. Bolton, to have an operation performed for pregnancy; that Miss Hayes spoke for and in the presence of Miss Gunderson. Mr. Fifield's testimony was to the effect that he ran an employment agency at St. Johnsbury and had got to know Miss Gunderson somewhat in consequence of her coming to his office, in company with Miss Hayes, for the purpose of securing situations, and that he had known the respondent, Dr. Bolton, more or less, for several years.

The testimony of Miss Gunderson and Miss Hayes was directly to the point that they left the train referred to, at the time referred to, at West Burke, and went to the house of the respondent where the operation was performed by the respondent in the course of an hour or so after they left the train.

The testimony of Dr. Downing, a practicing physician, of Littleton, N. H., was that nine days later, that is, June 26, 1916, Miss Gunderson called at his office in Littleton in the afternoon; that he found her with an abortion partly completed; that in the evening of the same day he was called to her room, in a block at Littleton, where he found her worse than in the afternoon; that he saw her early the next morning, found her in a very sick condition and took her to a hospital where she was delivered of a foetus and afterbirth. He testified that beyond any doubt the abortion was caused by some instrument passed in from the outside. Dr. Downing, as he testified, notified the sheriff of Littleton, and also called in two other doctors. One of the physicians so called in was Dr. Page, a practicing physician of Littleton, who was a witness. The testimony of the physicians, Doctors Downing and Page, tended to make it probable that an instrument had been used at least a week before the delivery of the foetus.

W. H. Worthen, sheriff of Caledonia County, testified that on July 5 or 6, 1916, some eight or ten days after Miss Gunder-

son fell into the hands of Dr. Downing and was taken to a hospital, the respondent, Dr. Bolton, was arrested on the charge here, and that after the preliminary hearing in that regard was closed, after the respondent had waived examination and been held for trial, the respondent, Dr. Bolton, told Mr. Worthen that Miss Gunderson came to his house, with another young woman, that she had a card from Mr. Fifield that she gave him, that he read it, that he was a friend of Mr. Fifield, and performed an operation on the girl, that he helped her out by performing an operation.

Dr. Fitch of St. Johnsbury testified in behalf of the respondent that sometime in June, 1916, Miss Hayes and another young woman, that his testimony and other evidence slightly tended to show was Miss Gunderson, came to his office; that this other woman told him that she was pregnant, and wanted to know if he could do something for her, saying in substance, that she wasn't able to help herself, that he replied to the effect that abortion wasn't in his line of business, whereupon Miss Hayes and her companion went away. The evidence tended to impeach both Miss Hayes and Miss Gunderson as witnesses, and as the foundation for it had been laid, it could not well be objected to by the State's attorney. The respondent however, claims that the statement of the person whom we will treat as Miss Gunderson, that she wasn't able to help herself, was evidence from which an inference could be drawn that Miss Gunderson had in fact tried to cause an abortion, but had found herself unable to do so. In speaking of this testimony of Dr. Fitch, the court told the jury that it bore upon the credibility of Miss Hayes and Miss Gunderson, but that whatever they may have done with respect to procuring the miscarriage would not relieve the respondent if he assisted in procuring it as the evidence on the part of the State tended to show.

The respondent excepted to the charge of the court as to the testimony of Dr. Fitch on the ground that the court limited its effect to its bearing upon the credibility of the testimony of Miss Gunderson and Miss Hayes. If we so treat the charge, the limitation was proper, for neither of these women was a party, and since the evidence was admissible and so not open to just objection, it was not too late for the court to point out to the jury its legitimate use.

The respondent's brief says that the testimony of Dr. Fitch

might perhaps have been limited to its impeaching effect, if it had been objected to for any purpose except that of impeachment; but the respondent's counsel contends that as this evidence came in, it was in the case as evidence in chief for what it was worth for all purposes. The principle invoked has frequently been recognized in the case of inadmissible evidence received without objection, but whether it applies in the case of evidence admissible for one purpose and not expressly limited at the time of admission we do not need to inquire. For if it is taken as true that Miss Gunderson tried to commit an abortion and found she could not, and so started out to find a doctor who would perform the operation, those facts would have no tendency to show that she did not find Dr. Bolton and have performed on her by him. the operation which the evidence tended to show.

The respondent requested cautionary instructions as to the matter of admissions by the respondent, the words used, the duty of the jury to reconcile the words used with his innocence, if they could be so reconciled; their duty, if they found that the respondent admitted that he performed an operation to find if they could consistently with all the other evidence in the case, that whatever he did was something that he had a right to do. The requests in this regard were complied with to the satisfaction of the respondent.

In explaining the case, on the theory of these requests, the court told the jury that as to whether the operation was necessary to save life, they were to take into consideration the testimony of Miss Hayes and Miss Gunderson and the doctors at the hospital in determining whether what "he" did do was done with the intention of procuring an abortion or whether it was done to preserve her life. The respondent excepted to this instruction, "in the connection in which it was given," on the ground that the circumstances and conditions testified to by the doctors from New Hampshire had just as much and just as likely a bearing on any other operation of the same kind as on the operation that the respondent was claimed to have performed. However, the court submitted the testimony of the New Hampshire doctors in connection with testimony of Miss Hayes and Miss Gunderson, and the charge as to the circumstances which the whole testimony tended to show was not erroneous. The connection in which the instruction complained of was given was appropriate and the real ground of the exception falls out.

As to whether the respondent did, in fact, perform an operation to procure an abortion, or whether, if such an operation was performed by any one, it was performed by Miss Gunderson herself, or by some other person than the respondent, the charge was all that the respondent was entitled to.

The respondent made a lengthy request, the principal feature of which was that the only testimony that the respondent was the person who inserted the instrument, said to have caused the miscarriage, was that of Miss Gunderson herself, and that she was not corroborated on that point. However, she was so directly corroborated on that point by Miss Hayes, that there is no occasion for discussing the matter. The court omitted to give the requested instruction and could not have done otherwise.

The respondent requested an instruction that unless the jury felt that the testimony of Miss Gunderson was sufficient to establish the essential facts to which she testified the verdict must be for the respondent. The argument here is that on the question of whether the respondent did the acts which caused Miss Gunderson to have a miscarriage her testimony stood absolutely alone. But the claim of the respondent's counsel as to the evidence was and is a mistaken one, and the court rightly omitted to give the instruction.

*Judgment that there is no error in the proceedings and that the respondent take nothing by his exceptions. Let execution be done.*