IN RE GEORGE W. MOXLEY'S WILL.

October Term, 1930

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed November 5, 1930.

104

*Lee E. Emerson* and *John J. Higgins* (of Boston, Mass.) for the contestant.

*William M. Wright* and *James B. Campbell* for the proponents.

MOULTON, J. This is an appeal from probate. On trial below the verdict established the, writing produced by the proponents as the last will and testament of George W. Moxley, late of Barton, deceased. The case is here on exceptions by the contestant.

The contestant, who is a resident of Massachusetts, is the only son of the deceased. The proponents are members of a family with whom Mr. Moxley, who was a widower, made his home. The proponents Harry C. Humphrey and Eunice Humphrey are husband and wife. The will disposed of the testator's estate by giving one-half to the contestant and dividing the other one-half among the proponents.

Several witnesses, called by the proponents, were allowed to testify that in their opinion, as based upon their observation, George W. Moxley, was of sound mind. This evidence was admitted subject, in each instance, to the contestant's exception on the ground that there was no sufficient foundation for the opinion. All of these exceptions may be considered together. Each witness, before giving his opinion, had testified to the length of time he had known Mr. Moxley, the periods varying from six to forty-five years; to the intimacy of the acquaintance; to their business and social relations; to the topics of their conversations; and several testified that they had been fellow directors with Mr. Moxley in the Orleans County Fair Association, and to the part taken by him in the affairs and manage-

ment of that concern. Much more detail was given than is here stated, but it is not necessary to rehearse it.

██ A non-expert witness may give his opinion as to the sanity or insanity of another, when based upon conversations or dealings which he has had with such person, or upon his appearance, or upon any fact bearing upon his mental condition, within the witness' own knowledge and observation, he having first testified to such conversations, dealings, appearance or other observed facts, as the basis for his opinion. *Foster's Exrs.* v. *Dickerson,* 64 Vt. 233, 244, 24 Atl. 253, and cases cited. The question whether the witness has had an adequate opportunity of observation, in circumstances calculated to result in an inference helpful to the jury is largely one of administration and within the discretion of the trial court. *In re Estate of Martin,* 92 Vt. 362, 366, 104 Atl. 100; *In re Wood's Will,* 95 Vt. 401, 411, 412, 115 Atl. 231. No arbitrary standard of measurement as to quantity or quality can be established to apply to every witness and every case. The extent of the witness' acquaintance, and dealings with, and observation of the person whose sanity is under inquiry, affects the weight to be given to his opinion, and its credibility, which must be left to the jury to decide. *In re Estate of Martin, supra; In re Wood's Will, supra.*

██ ██ In view of the testimony of the several witnesses as to their respective acquaintance, and business and social relations with Mr. Moxley, and their consequent opportunities for observation, it is apparent that there was no abuse of discretion in permitting them to give their opinions as to his sanity. The fact that they did not repeat the conversations they had had with him but only stated the subject-matter of them did not affect the question of the admissibility of the evidence.

At the close of the proponent's evidence the contestant moved for a directed verdict, and excepted to the denial of the motion. He introduced no evidence but rested his case upon that of the proponents.

The principal question raised in various ways by the motion is that of the identify of the person who signed the will. The contestant claims that there was no evidence tending to show that the signer of the document was George W. Moxley, the deceased.

108

Taken in the light most favorable for the proponents. the evidence tended to show the following facts: George W. Moxley, for many years a resident of Barton, died in August, 1929, aged about seventy years. He was a tall, large man and, with the exception of the illness presently to be noticed, was active in business until February, 1929. For about ten years previous to his death he lived in the household of the proponent George C. Humphrey, where he was comfortable and well cared for. In the early part of September, 1927, he attended the Rutland County Fair, and while there he was ill with prostate trouble. He returned to Barton, and was treated by his physician, Doctor Blake. On September 13, attended by Doctor Blake and the proponent Eunice Humphrey, who was a graduate nurse, he went to Burlington to consult Doctor Townsend, by whom he was advised to enter the Mary Fletcher Hospital and undergo an operation. He did so, and about six weeks thereafter he went back to Barton where he remained until his death, about two years later.

On September 15, a stranger came to the law office of Mr. Alfred L. Sherman, of Burlington (now Judge Sherman of the Superior Bench), gave his name as George W. Moxley, and his residence as Barton, and said that he desired to have his will prepared. He was alone. He was in appearance a large, strong man, of an age estimated by one witness as "probably around sixty." He informed Mr. Sherman that he had been at the Rutland Fair, and that he was about to go to the hospital to have an operation for prostate trouble, and that this was his reason for desiring to make his will. He inquired whether he could legally leave his property to some one other than his son, and said that he had a reason for doing so, although he did not mention what it was. He said that the proponents had been kind to him and that he wanted to give them something. He gave Mr. Sherman directions for the disposal of his estate, and named his executor. Mr. Sherman prepared the will accordingly, and it was executed. The witnesses were Mr. Sherman, his secretary, and a stenographer from a neighboring office. The client signed the name "George W. Moxley," By his direction, Mr. Sherman sent the will by mail to the bank at Barton, where Mr. Moxley was a customer, and kept his account. It was duly received and remained at

the bank until his death. No proof of the handwriting of the deceased was offered.

In the absence of direct evidence the identity of a person may be proved in various ways of which perhaps the most usual are by the description of his physical appearance and characteristics and by a comparison of handwriting. But *identitas vere colligitur ex multitudine signorum.* There are other tokens which may be equally convincing. Generally speaking, any fact, no matter how slight, which would tend to satisfy a person of oridinary judgment, in the conduct of his everyday affairs, as to the identity of another is admissible in evidence upon that issue. Underhill, Criminal Evidence (3rd ed.), par. 108; Wharton, Criminal Evidence (9th ed.), par. 27; and see *State* v. *Martin,* 47 S. C. 67, 25 S. E. 113, 115.

Mr. Wigmore says that where the fact in issue is whether X is A, and "A is shown to have done a certain act, to have had certain marked and individual experiences; if X did this act or had this experience, he probably is A; thus, as indicating whether X did or had it, the fact of his present belief or consciousness or recollection becomes relevant, and therefore his conduct as evidencing that belief." Wigmore, Evidence (2nd ed.), par. 270. So it has been held that the statements made *ante litam motam* by a person whose identity is in question which show a recollection or knowledge of the acts, affairs, or experiences of the person whom he is supposed to be are relevant and admissible upon the issue of his identity.

In *Nehring* v. *McMurrian,* 94 Tex. 45, 51 S. W. 943, 945, statements made by a person as to his birthplace, the names of his parents, and when and where his father died, were held to be relevant upon this issue. The court said that "evidence to prove the making of the declaration may be received from any one who heard it made, and this kind of evidence does not fall within the definition of hearsay." The rule was thus stated: "Such statements made by a party, before any controversy had arisen, in his ordinary intercourse with those by whom he is surrounded, occurring naturally as a part of his daily life and conduct, and being the means by which people generally learn and act upon his identity and antecedents, afford circumstantial evidence tending to show who he is. They are of a character not inherently different from his statement as to his name, etc."

In *Jackson* v. *Etz*, 5 Cow. (N. Y.) 314, 316, 317, the question was whether John Tool had died without heirs. There was no evidence of the existence of more than one John Tool. It appeared that he was an Irishman of a certain age, appearance, and characteristics, and resided in a certain town, and that he was a soldier in the American Army in the War of the Revolution and disappeared from camp on a certain night, at which time the plaintiff claimed that he met his death. The defendants introduced evidence tending to show that at about the time of the disappearance, a man going by the name of John Tool, of the same age, appearance and characteristics, returned to the town in which the soldier had lived, and was heard to say that he had deserted from the army, and to give the particulars of his desertion and his motive for the act. It was from this man that the defendants traced their descent. His statements concerning the desertion, taken in connection with the other circumstances, were considered as competent evidence of his identity.

In *Mullery* v. *Hamilton,* 71 Ga. 720, 722-726, 51 A. R. 288, the personal appearance of a person, the fact that he called himself John J. Hamilton, and what he said concerning his parentage and the names of his relatives, were held to be evidence of his identity. Similar evidence was considered as relevant to the same issue in *Hardy* v. *Harbin,* 154 U. S. 598, 22 L. ed. 378, 380, 382, Appx. 14 Sup. Ct. 1172, and in *Howard* v. *Russell,* 75 Tex. 171, 179, 12 S. W. 525, 528.

This is the same principle as that upon which the claimant in the famous Tichborne Case was cross-examined by Sir John Coleridge as to various matters which, if he had been the rightful heir, would have been within his knowledge and recollection. In the later trial of the claimant for perjury (1874 *Reg.* v. *Castro, alias Orton, alias Tichborne*), Cockburn, C. J., said in his charge to the jury: ''Although outward appearances may deceive, yet if you are acquainted with what has passed through the mind of a man, and another man were to come forward and say: 'I am that man,' you have only to ask him as to the events of the other man's life, those at least which must have remained impressed on his memory, and which, therefore, if he be the man, he must of necessity retain, to enable him to demonstrate that he is the man he says he is, or to enable you to pronounce that he is not'' (quoted in Wigmore, *supra*).

Naturally, as Mr. Wigmore says, this sort of evidence has its weaknesses. It is open to the explanation that the declarant may have heard of the events from others. His knowledge of these matters does not at all preclude the possibility that he was an imposter, any more than the ability, if it had existed, on the part of Arthur Orton correctly to translate the motto "*Laus Deo Semper*" would have been conclusive proof that he was in truth Sir Roger Tichborne. All that is to be said for it is that it is some evidence of identity. Its weight and credibility is for the jury to decide.

In the instant case there is evidence that a man calling himself George W. Moxley, and giving his residence as Barton, made statements which showed a knowledge of the movements and affairs of the supposed testator. Mr. Moxley was actually in Burlington on the day in question. The evidence of personal appearance is meager, but we cannot say that it is entirely lacking, because testimony as to similarity in size is competent. *Angley* v. *State*, 35 Tex. Crim. 427, 34 S. W. 116, 117.

Taking these circumstances together, our conclusion is that there was evidence fairly and reasonably tending to show that the person who signed the will was George W. Moxley, the deceased. There was no error in overruling the motion upon this ground.

Another ground for the motion was that the circumstances preceding and attending the execution of the will were suspicious and the disposition of the property therein made was unnatural, so that the burden of disproving the existence of undue influences was cast upon the proponents, which burden they had failed to sustain. The possibility of undue influence is suggested in the contestant's brief only with regard to the proponent Eunice Humphrey, and it is based upon the evidence that Mr. Moxley was nearly seventy years of age, and ill and under the doctor's care, and that this proponent was his nurse while at the hospital at the time of his operation, and was also a member of the household in which he had lived for a number of years. It is argued that she stood in a position of confidential relationship to him, with the opportunity of warping his judgment and imposing her will and her desires upon him, and that from this situation the law will presume the exercise of

112

undue influence and place upon the proponent the burden of showing the contrary.

The burden of proving the existence of undue influence is, ordinarily, upon the contestant. *In re Healy's Will*, 94 Vt. 128, 134, 109 Atl. 19; *In re Watkin's Will*, 81 Vt. 24, 27, 69 Atl. 144. But when the circumstances connected with the execution of the will are such as the law regards with suspicion, the burden is shifted to the proponent, who must show affirmatively that the will was not procured by this means. *In re Watkins' Will, supra.* Indeed, it has been held that in such a situation the law raises a presumption of undue influence, which establishes *prima facie* the existence of it, and is sufficient to defeat the will unless and until it is overcome by counter proof. *In re Cowdry's Will*, 77 Vt. 359, 362, 60 Atl. 141, 3 Ann. Cas. 70; *In re White's Will*, 78 Vt. 479, 484, 63 Atl. 878; *In re Rogers' Will*, 80 Vt. 259, 269, 271, 67 Atl. 726. Generally speaking, the doctrine is applicable where a relationship of trust and confidence obtains between the testator and the beneficiary, or where the latter has gained an influence or ascendency over the former. Usually, but not always, it appears that the beneficiary has procured the will to be made or has advised as to its provisions. See cases cited. *In re Watkins' Will, supra.* There are certain modifications to the doctrine which affect the relationships of husband and wife, or parent and child, which it is not necessary to consider. *In re Watkins' Will, supra; In re Healy's Will, supra.* No rule of general application can be formulated to cover all varying circumstances. *In re Barney's Will*, 70 Vt. 352, 361, 40 Atl. 1027. Mr. Wigmore says that it is not possible to say that any single circumstance or group of facts is the invariable mark of such a presumption, or that there is any uniform rule capable of application apart from the facts of each case. Wigmore, Evidence (2nd ed.), par. 2503; *In re Rogers' Will, supra.*

We do not think that the relationship of nurse and patient, at least to the extent here appearing, is enough of itself to raise a presumption of undue influence, or that the attending circumstances were such as to generate suspicion. There is no evidence that Eunice Humphrey exercised any influence or ascendency over Mr. Moxley. He was, according to the testimony, a man of sound mind and active in his business affairs and, at the time of the execution of the will, no physical

weakness was apparent as the result of his illness. The proponent was not present when the will was prepared and signed. Nothing appears to show that she had anything to do with its preparation, or that she advised it to be done. There is no evidence that she acted as his nurse at any time prior to the operation, and as to this all that appears is that when Doctor Blake returned to Barton, she remained to nurse Mr. Moxley. How long she remained does not appear. The will was executed before the operation was performed. The fact that Mr. Moxley made his home at the Humphrey house both before and after his operation is not enough, either standing alone or taken in connection with the other circumstances mentioned above, to raise a presumption of undue influence.

██ ██ Neither can it be said, as a matter of law, that the provisions of the will were so unnatural and unreasonable as to aid in raising the presumption. Mr. Moxley had, of course, the right to dispose of his property as he saw fit. The claim that his disposition of it was unnatural is based upon the fact that he gave only half of it to the contestant. Nothing appears to show the necessities, or circumstances of the latter, and there is evidence of Mr. Moxley's friendship with the proponents. "It is only when the will is grossly unreasonable in its provisions, and plainly inconsistent with the testator's duty to his family, that, in case of doubt, the inequality can have any effect on the question of undue influence." *Herster* v. *Herster*, 122 Pa. St. 239, 16 Atl. 342, 348, 9 A. S. R. 95. We hold that there was no error in the denial of the motion on this ground.

Certain of the exceptions to the charge raise the question as to the identity of the signer of the will, which we have already considered, and so it is unnecessary to give it further attention. One of these exceptions is to the statement of the court that there was evidence on the part of Judge Sherman and those in his office as to the physical appearance of the alleged testator. There was no error here. While, as we have said, the evidence on this point was meager, yet, taken in connection with the other circumstances appearing, it was entitled to some weight.

In the course of the charge, after mentioning the testimony of the witnesses to the will concerning the physical appearance of the person who signed it, the court said: "You can compare that with what kind of a man the other witnesses have said he was. There is evidence that on that occasion George W. Moxley

was actually in the city of Burlington. The will has the signature of George W. Moxley attached to it. Has there been any claim that that is not his signature?'' The contestant excepted to this, on the ground that the burden was upon the proponents to show that it was the signature of George W. Moxley, and that there was no burden on the contestant to show otherwise.

 If this passage stood alone there would be much force to what the contestant says. The burden of proof on this issue was on the proponents. *Williams* v. *Robinson,* 42 Vt. 658, 663, 1 A. R. 359. But the charge is not to be construed piecemeal. An instruction claimed to be erroneous must be read in the light of what is elsewhere said upon the subject. *Landry* v. *Hubert,* 100 Vt. 268, 279, 137 Atl. 97; *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294, 325, 326, 60 Atl. 74, 107 A. S. R. 765; *State* v. *Bolton,* 92 Vt. 157, 161, 102 Atl. 489; *Cole* v. *N. Danville Creamery Ass'n,* 103 Vt. 32, 44, 45, 151 Atl. 568. Although the charge ''may contain some expressions that, taken alone, would be error, yet if as a whole it breathes the true spirit and doctrine of the law and there is no fair ground to say that the jury has been misled by it, it ought to stand.'' *Fassett* v. *Roxbury,* 55 Vt. 552, 556.

 In the instant case, the jury was plainly told that the issue was whether George W. Moxley was the person who signed the document, and that the burden was upon the proponents to prove this fact by a proponderance of the evidence. The language of which complaint is made was used in connection with the foregoing instruction. What the court evidently meant in saying ''the signature of Mr. Moxley,'' and what, we think, the jury must have understood the meaning to be, was that the name signed was his, and not that he actually signed it. The latter point was clearly left to the jury by the charge. Nor could the rhetorical question which followed the words above quoted, in the light of the statement as to the burden of proof almost immediately following it, be understood as placing the burden of disproving the genuineness of the signature upon the contestant. Thus construed, no error appears.

 After having instructed the jury that the weight to be given to the testimony of the various witnesses was for it to decide, and mentioning various matters to be considered in determining it, the court said: ''In short, you may consider anything you have observed here in court that throws any light

on the reliability of their testimony.'' To this the contestant excepted, but since his counsel, in argument, has conceded that he is unable to show that prejudice has resulted from the language, the exception is unavailing even assuming the charge to have been erroneous. *Higgins' Admr.* v. *Metzger,* 101 Vt. 285, 298, 143 Atl. 394; *MacDonald* v. *Orton,* 99 Vt. 425, 431, 134 Atl. 599. The burden of showing prejudice is upon the excepting party. *Smith* v. *Martin,* 93 Vt. 111, 106 Atl. 666; *Jenness* v. *Simpson,* 84 Vt. 127, 140, 78 Atl. 886.

█ The contestant excepted to the failure of the court to charge that the statements contained in the will were not to be taken as statements of fact, but must be proven. He argues that he was entitled to a charge that the will must be proved by evidence extrinsic to the document itself. This, however, was the purport of the charge as given and no error appears.

The exception to the judgment is covered by what we have already said in this opinion. We find no reason for a reversal of the judgment below.

*Judgment affirmed. To be certified to the probate court.*

ON MOTION FOR REARGUMENT*

After the foregoing opinion was handed down, counsel for the contestant obtained leave to file a motion for reargument, pending which the entry of judgment has been withheld.

██ The motion appears to be based upon a misunderstanding of the opinion. There are four grounds upon which reargument is sought. The first is that the opinion ignores the rule that the signature to a will must be proven. What we held was that there was evidence upon which the jury was justified in finding that the person who signed the will was George W. Moxley, the testator. Proof that he was the signer was necessarily proof that the signature was his. It was equally competent upon this issue as proof of his handwriting would have been.

██ The second ground is that there was no evidence that the testator was in the city of Burlington on September 15, 1927, the day on which the will was executed. No such claim was

*Opinon on motion for reargument filed January 7, 1931.

advanced upon the argument of this case, and a rehearing will not be granted for the purpose of affording opportunity to present new questions. *Ryan* v. *Orient Ins. Co.*, 96 Vt. 291, 305, 119 Atl. 423. However, it appears by the transcript that the trial court instructed the jury that there was evidence that he was in Burlington on the day in question, and no objection was made or exception taken to this statement by the contestant. The evidence showed without dispute that George W. Moxley went to Burlington, for the purpose of undergoing an operation, on September 13, 1927, and that after the operation he returned to Barton, having been absent about six weeks. The fair inference to be drawn from this evidence is that he was in that city upon the day in question. To draw this inference is not as the contestant claims, to presume in favor of the due execution and validity of the will. See *Williams, Exr.* v. *Robinson*, 42 Vt. 658, 663, 1 A. R. 359.

In the third ground of the motion it is maintained that the testimony of Judge Sherman as to his conversation with the alleged testator just previous to the execution of the will was hearsay and should not have been considered. But an examination of the opinion will disclose that this evidence is therein held not to be within the definition of hearsay.

The fourth ground is that the three attesting witnesses to the will were incompetent, because they were strangers to the person who signed it. No question is made as to the regularity of execution, or that the document purported to be the will of the signer. None of the subscribing witnesses testified that the signer was George W. Moxley. All that any of them said was that he said that that was his name, or that they were introduced to him as Mr. Moxley. Evidence of his appearance and the correspondence of his statements with the proved experiences and affairs of George W. Moxley was the basis upon which his identity was established to the satisfaction of the jury. These witnesses were competent. However desirable it may be that the subscribing witnesses to a will shall be personally acquainted with the testator, especially where the issue of testamentary capacity is involved (*Dunkeson* v. *Williams* [Mo. Sup.] 242 S. W. 643, 658) ; or where the will itself is missing and a copy of it is produced for probate (*In re Bernhardt's Estate* [N. J. Prerog.] 143 Atl. 92, 93, 94) ; or where the attending circumstances point to the existence of fraud (*McAndrews*

*Estate,* 206 Pa. 366, 368, 55 Atl. 1040) ; a stranger *qua* stranger is not incompetent to act as such. See *Kris's Estate,* 30 Pa. Dist. Rep. 166, 169; *Mowry* v. *Silber,* 2 Brad. Sur. (N. Y.) 133, 139. Indeed, a contrary doctrine would be often attended by injustice. Where, as here, a person is away from home, and an operation of a serious nature or other emergency is impending, the natural solicitude for the disposal of his property to those whom he wishes to benefit in the event of an adverse result, is a strong incentive to the execution of a will; and if three persons of his acquaintance are not to be found upon the instant to act as subscribing witnesses, his desire to make a testamentary disposition of his estate ought not for that reason to be frustrated.

We have considered all the questions raised by the motion.

*Motion for reargument overruled. Let full entry go down.*